JOHN L. WILSON, Plaintiff in Error, v. ALBERT G. PEARSON, Assignee of J. Grant Osbourne, Defendant in Error.

ERROR TO COOK.

A debtor in failing circumstances may make an assignment for the benefit of his creditors, and if fairly done, it passes the title to his property to his assignee. The question of fairness of the transaction, is one of fact, for the finding of the jury, and the finding of the jury, when the question is properly submitted, will not be disturbed.

Where an assignment by such a creditor covers only personal property, it need not be recorded, if possession accompanies the assignment.

Whether certain facts would have the legal effect of an abandonment of an asignment, may or may not be conclusive; they should be accompanied with an intention to abandon, and that intention should be left to the jury for decision.

THIS was an action of replevin, brought by Pearson, the defendant in error, in the Circuit Court of Cook county, to recover possession of a stock of boots and shoes, valued at $1,400.

The writ was sued out on the 10th January, A. D. 1857, and executed by the coroner of said county on the 12th, by taking the goods from the possession of Wilson, the plaintiff in error, who, as sheriff of said county, held the goods, and had advertised them for sale, by virtue of two writs of execution, issued against the property of J. Grant Osbourne.

The defendant, Wilson, pleaded : 1. The general issue. 2. Property in Osbourne. 3. Property in defendant. 4. That he took the said goods by virtue of a writ of execution in favor of Whipple, Alley & Billings against said Osbourne. 5. That he took the said goods by virtue of a writ of execution in favor of Pearson & Dana, against said Osbourne.

Issue was joined thereon, and the cause tried by a jury at the November term of said court, A. D. 1857, before MANNIERE, Judge.

J. Grant Osbourne, on the part of the plaintiff, testified : That the paper purporting to be an assignment from witness to Albert G. Pearson, for the benefit of his creditors, dated January 5, 1857, was signed by him and Pearson ; I was unable at that date, January 5, 1857, to pay my debts ; the 5th was on Monday ; the assignment was made on Monday, was signed and sealed that forenoon. After it was made, Pearson came over to the store, went into back room, and said to Nixon, my foreman, " I am boss here now, and will see you paid." Pearson's clerk came in the afternoon ; the store that night was locked up by Nixon, by direction of Pearson, and opened next morning. I did not exercise any act of ownership that day ; after Pearson's clerk came in that afternoon, he got a book to enter sales

in, and put up a sign on the wall near the door, and a large placard in front window, " This stock and lease for sale, apply to A. G. Pearson, assignee." It was pretty large, and continued there. In the rear of the store a placard was put up at the desk, so that it could be seen distinctly. They were all of the same tenor, and were put up on the day of the assignment.

I was in the store on Tuesday morning, and then absented myself. Pearson's clerk was there, also Nixon and the workmen, and continued to work as before. The signs were there; that afternoon (Tuesday) I found the store had been closed by the sheriff; was not there when the sheriff came ; went to see Pearson, and asked him the meaning of it; and he said he should replevy the goods. The inventory in the assignment contains a true statement of all the stock then on hand, of all my property, and all debts. It was made on the third of January and executed on the fifth.

The plaintiff also offered in evidence a paper purporting to be an assignment of property of J. Grant Osbourne to Albert G. Pearson, for the benefit of his creditors, not recorded, dated January 5, 1857 ; to the introduction of which said paper in evidence, the said defendant objected. Objection overruled, and exception taken.

The defendant introduced in evidence a writ of execution and fee bill issued out of the Cook County Court of Common Pleas, tested January 2, 1857, in favor of Whipple, Alley & Billings, and against the property of J. Grant Osbourne, which, with the return of the sheriff of Cook county, were admitted in evidence without exception. The return indorsed thereon is—

By virtue of the within writ, I did levy on a general stock of boots and shoes, the property of the within named defendant, on the 6th of January, 1857, and on the 12th day of January, 1857, they were replevied by the coroner of Cook county ; therefore I return this writ no part satisfied, this 2nd day of April, 1857.

JOHN L. WILSON, Sheriff,
By GEORGE ANDERSON, Deputy.

The defendant also introduced in evidence a writ of execution and fee bill issued out of the Circuit Court of Cook county, on judgment confessed, in favor of Albert G. Pearson and William V. Dana, and against the property of J. Grant Osbourne, tested January 7, 1857, which, with return of sheriff indorsed thereon, was also admitted in evidence without exception. The sheriff's return indorsed thereon is—

By virtue of the within execution, I did, on the 7th day of January, 1857, levy on a general stock of boots and shoes, the property of the within named defendant,

J. G. Osbourne, and on the 12th day of January, 1857, were replevied from me by the coroner of Cook county; therefore I return this execution no part satisfied, this 7th day of April, 1857.

　　　　　　　　　　　JOHN L. WILSON, *Sheriff,*
　　　　　　　　　By George Anderson, *Deputy.*

*George Anderson,* testified for defendant as follows: I am deputy sheriff of John L. Wilson, the sheriff of Cook county, and was on January last. This execution of Whipple, Alley & Billings, and against J. Grant Osbourne, for the sum of $682.89, and costs, was put into my hands, and levied by me upon a stock of boots and shoes in a store on the west side, occupied by J. Grant Osbourne, as shown by return. I don't recollect from whom I received this execution in favor of Pearson & Dana, and against Osbourne. I received it from some person with instructions to levy it immediately, and I levied upon the goods before it was taken into the sheriff's office. I levied it on the 7th of January last, upon the same stock of boots and shoes I levied the first (Whipple's) execution on. I had the stock in my possession when I received the Pearson & Dana writ. My impression is, that Pearson, or Stevens, his attorney, gave me the writ. I advertised the goods for sale under both executions, and notice of sale was posted up when the goods were replevied out of my hands. I think it was Pearson who directed me to make the levy.

I received the Whipple execution at 4 o'clock, January 6, 1857; that evening I made the levy on the stock. A young man there told me there was an assignment to some shoe store down on Lake street; he did not know the name. After I returned, I learned that Pearson & Dana were the assignees. I then made a levy, and put a man in possession. I levied the first time I went there.

It is admitted that Albert G. Pearson, the plaintiff in this suit, is the same person who is one of the plaintiffs in the Pearson & Dana execution, and that J. Grant Osbourne confessed a judgment on which said Pearson & Dana's execution issued January 7th, 1857, for $635, and costs.

The defendant also called *H. B. Stevens,* who, being sworn, testified as follows:

I presume the note of Osbourne to Pearson & Dana was executed on the 5th or 6th of January, 1857, and was ante-dated to January 1st. I think it was after the assignment was executed. The note was executed at Pearson's store, and judgment afterwards entered up. The consideration of the note was $500 due Pearson & Dana, and $100 due to Ward, and $25 for my fees. I had judgment entered, and left the execution with the sheriff, with orders not to levy until he heard from me.

I was attorney for Pearson and Osbourne in drawing the assignment. It was executed January 5, 1858. After Anderson levied on the goods, it became important to ascertain when the Whipple execution came into the hands of the sheriff. I went to the sheriff's office, and did not find it noticed on the sheriff's books. I found judgment entered up in favor of Whipple and others, against Osbourne, January 2, 1857, on confession, and execution noted on the docket. On the morning of the 7th, not being able to find out about the Whipple execution, I went to Rich's office, Whipple's attorney, and he gave me to understand that the Whipple execution was in the hands of the sheriff before the assignment was made. I then advised Osbourne to confess judgment in favor of Pearson & Dana, in order to procure a levy and come in second best.

The court gave the following instructions to the jury, on the part of the plaintiffs, viz.:

A debtor in failing circumstances may assign his property for the benefit of creditors, either with or without preferences. An assignment, when made in good faith, and accompanied and followed by possession of the property assigned, is warranted by law. Therefore, if the jury believe, from the evidence, that the assignment in question was made in good faith, and that the plaintiff took open and actual possession of the property assigned, previous to the time when the execution in favor of Whipple, Alley & Billings was received by the defendant, or by his deputy sheriff, George Anderson, then the law is for the plaintiff, and he is entitled to a verdict in his favor for a return of the property mentioned in the narr.

Actual fraud is not to be presumed, but should be proven by the party alleging it. The law presumes good faith controls business transactions; therefore, if the jury believe, from all the circumstances in evidence, that the nature and design of the assignment in question were *bona fide*, to secure and pay, first, an indebtedness due to Pearson & Dana, and S. A. Ward (after paying the just and reasonable expenses attending the executing the trust); and second, to use and apply the rest and residue of the net proceeds of the property assigned in and toward the payment of the other debts of Osbourne, and that said assignment was not contrived, as a fraud on the part of Osbourne and the plaintiff, to cheat or hinder the creditors of Osbourne, the law is for the plaintiff; if the jury shall also find that the assignee took possession of the property, and that such possession was continued to and at the time of the levy.

If the jury shall find, from the evidence, that the assignment in question was in fact made by Osbourne to Pearson, and that Pearson entered into and took open, actual and exclusive pos-

session of the goods assigned, then the subsequent declarations and actions of Pearson, introduced in evidence in this suit, and the subsequent declarations and actions of Osbourne, can only be taken into consideration by the jury, for the purpose of determining the intent at the time of the inception of the assignment, viz., whether such assignment was made with intent to hinder or delay creditors of Osbourne, and enable him, under cover thereof, to carry on business.

If an assignment is *bona fide*, and not shown to be fraudulent as to creditors, then neither mismanagement nor fraudulent disposition of property under an assignment, by an assignee, can affect the instrument, or his title under it; they may be grounds for a removal by a court of equity, but cannot be inquired into in an action at common law, brought to try his title to the property assigned.

The law does not require an assignment of personal property for the benefit of creditors to be recorded; the same not being recorded is no evidence of fraud.

In all cases of alleged fraudulent sales of personal property, a knowledge of, or participation in, the fraud, must be shown on the part of the buyer as well as the seller, in order to defeat the recovery of the plaintiff.

Exception taken to plaintiff's instructions.

The court also gave the jury the following instructions, on behalf of the defendant, viz.:

If the jury shall believe, from the evidence, that the assignment by Osbourne was made to Pearson with the intent to hinder and delay any of his other creditors, in the collection of their debts, to enable Osbourne, under the color thereof, to continue his business, and in possession of his property for his own benefit, then such assignment is fraudulent and void as to his creditors, and the jury should find a verdict for the defendant.

If the jury shall find, from the evidence, that the assignment in question was *bona fide*, then, unless it is also shown by the evidence that the assignee, Pearson, did take actual and exclusive possession of the goods before the levy under the Whipple execution, the verdict should be for the defendant. [Given by the court on its own motion.]

If the jury believe, from the evidence, that the assignment from Osbourne to Pearson was made with intent to hinder, delay or defraud the creditors of Osbourne, then the verdict should be for the defendant; and in deciding upon the intent, the jury may take into consideration subsequent as well as prior circumstances, and the transactions of the parties, to explain such intent.

If the jury believe, from the evidence, that at or about the time of the assignment from Osbourne to Pearson, there was an

understanding or stipulation between them, though not expressed in the assignment itself, to allow Osbourne a specified sum for his services in the management of the property assigned, and that Osbourne should retain possession of the same, for his own benefit, as agent for Pearson, or otherwise, to enable him to control his business to the hindrance of his creditors, such stipulation or understanding is evidence of fraud, and the defendant is entitled to a verdict.

The defendant also requested the court to give the following instruction to the jury, viz.:

V. "If the jury believe, from the evidence, that after the alleged assignment from Osbourne to Pearson was executed, and before the same was recorded, and before the other creditors of said Osbourne had in any way assented thereto, Osbourne confessed a judgment in favor of Pearson & Dana, for the amount, or more than their claim, as set forth in the schedule attached to said assignment, and that execution was thereupon issued on such judgment, and levied on the property alleged to have been assigned, then the verdict should be for the defendant, such alleged assignment being thereby virtually abandoned, annulled and released by the parties thereto, the only parties on whom it had any binding force."

The court refused the instruction as asked for, but gave another in lieu thereof, as follows, viz.:

V. "If the jury find, from the evidence, that after the alleged assignment to Pearson, and after the levy of the Whipple execution by deputy sheriff Anderson, and possession taken by him, the debtor, Osbourne, confessed a judgment in favor of Pearson & Dana, for the amount of their claim, including also the claim of Ward, the other preferred creditor, and that Pearson thereupon caused execution to be issued, and directed a levy upon the assigned property to be made by Anderson, and that the said judgment was so confessed, and execution was so levied with the intent to abandon said assignment, then the levy under the Whipple execution acquired a priority of lien over the goods in question, and the jury should find for the defendant."

To the refusal of the court to give said 5th instruction as asked, and to the giving of the one in lieu thereof, the defendant excepted.

The jury returned a verdict for the plaintiff.

Defendant then moved the court for a new trial on the following grounds:

The verdict of the jury is against the law.

The verdict is against the evidence.

Because the court gave the instructions submitted by plaintiff's counsel, said instructions tending to mislead the jury.

Because the counsel for plaintiff contended before the jury, and the court so instructed the jury, that unless they found actual fraud, both in the plaintiff and Osbourne, in the inception of the assignment, and before the levy of the Whipple execution, the verdict must be for the plaintiff.

Because the court gave a new instruction for defendant in lieu of one (the 5th) submitted by defendant's counsel, relative to the Pearson & Dana judgment and execution.

Because the court modified other instructions submitted by defendant's counsel.

Motion overruled, and defendant excepted, and tendered his bill of exceptions.

Errors assigned: 1st. The Circuit Court erred in admitting improper evidence.

2d. The Circuit Court erred in giving the 1st, 2d, 3d, 4th, 5th and 6th instructions on behalf of the plaintiff.

3d. The Circuit Court erred in refusing to give the 5th instruction on behalf of defendant, as drawn, and submitted by defendant's counsel.

4th. The Circuit Court erred in refusing to grant a new trial.

RICH & STEELE, for Plaintiff in Error.

H. B. STEVENS, for Defendant in Error.

WALKER, J. The plaintiff in error questions the decision of the Circuit Court in overruling his motion for a new trial, because, it is alleged, that the verdict was not warranted by the evidence in the case. There can be no question but the law does permit a debtor in failing circumstances to make an assignment of his property for the benefit of his creditors; and if fairly and *bona fide* made, it passes the title in such property to his assignee, for their benefit. The question of fairness and *bona fides* of the transaction is a question of fact for the finding of the jury. The plaintiff's instructions which were given, properly left that question to the jury for their determination from all the circumstances in evidence. They have found that it was fair, and we have no disposition to disturb their finding. It was urged that the deed of assignment was in operation as against the creditors, because it was not recorded before the levy was made. This deed only purported to transfer personal property, and we have not been referred to, nor are we aware of any decision which requires it, where the possession accompanies the deed of assignment.

On a sale of chattels, whether by bill of sale, by mortgage, by deed of trust, or on a verbal sale, the title rests and becomes

complete against creditors and subsequent purchasers, by a delivery to the purchaser, mortgagee or trustee. Possession of chattels is notice and evidence of ownership.

The 20th chap. R. S., section 1, p. 91, provides that: "No mortgage on personal property shall be valid as against the rights and interests of any third person or persons, unless possession of such personal property shall be delivered to and remain with the mortgagee, or the said mortgage be acknowledged and recorded as hereinafter directed." This provision clearly makes the delivery of possession as effectual as the acknowledgment and record of the mortgage. And the last section of the chapter extends its provisions to bills of sale, deeds of trust, and conveyances of chattels. There is no force in this objection.

It was insisted that the court below erred in refusing to give the defendant's fifth instruction. That instruction, as asked, was: "If the jury believe, from the evidence, that, after the alleged assignment from Osbourne to Pearson was executed, and before the same was recorded, and before the other creditors of said Osbourne had in any way assented thereto, Osbourne confessed a judgment, in favor of Pearson & Dana, for the amount, or more than their claim, as set forth in the schedule attached to said assignment, and that execution was thereupon issued upon such judgment, and levied on the property alleged to have been assigned, then the verdict should be for defendant; such alleged assignment being thereby virtually abandoned, annulled and released by the parties thereto, the only parties on whom it had any binding force."

The court gave as a modification of the foregoing, the following instruction: "If the jury shall find, from the evidence, that after the alleged assignment to Pearson, and after the levy of the Whipple execution by deputy sheriff Anderson, and possession taken by him, the debtor, Osbourne, confessed a judgment in favor of Pearson & Dana for the amount of their claim, including also the claim of Ward, the other preferred creditor, and that Pearson thereupon caused execution to be issued, and directed a levy upon the assigned property to be made by Anderson, and that the said judgment was so confessed, and execution was so levied, with the intent to abandon said assignment, then the levy under the Whipple execution acquired a priority of lien over the goods in question, and the jury should find for the defendant." This instruction was based on the evidence, and the question presented is, whether the facts supposed by the instruction, if they were found to exist by the jury, would have the legal effect of an abandonment of the assignment by the parties; or whether the acts done, to have such effect, should

have been accompanied with the intention to abandon. In all transactions which are tainted with fraud, the intention of the parties is a material ingredient. The intention is manifested by their acts, to some of which the law attaches the effect of conclusions, which cannot be explained or rebutted, while others may. But in this case the question was whether the parties had abandoned the assignment, and had virtually canceled the deed. No reason is perceived why the acts of these parties should be held conclusive of such intent. They acted as men usually do under such circumstances. Osbourne had preferred Pearson and Ward, two of his creditors, by the assignment, and when the property was levied on under an execution in favor of a creditor who had not been preferred, and taken out of the possession of the assignee, it was natural for Pearson and Ward to desire to retain the preference which the assignment had given them, and it was consistent with the debtor's previous acts to assist them in retaining such preference. The mode suggested to attain that end, in the event that the contest then commenced over the assignment should result in its invalidity, was to procure a judgment and levy. They, it seems, were advised by their attorney to this course, and it was proper to leave it to the jury, under all the circumstances, to determine what their intention was. They have found the fact that it was not to abandon, and we think the evidence justified the finding. Upon the whole record no error is discovered for which the judgment of the Circuit Court should be reversed.

*Judgment affirmed.*