JEROME HOWE et al.

v.

EVERETT M. WARREN et al.

*Filed at Ottawa October 29, 1894.*

1. INSOLVENCY—*deed of assignment revocable at common law.* Before the act providing that upon discontinuance of insolvency proceedings all parties shall be restored to the same rights and duties existing at the date of the assignment, a deed of assignment for the benefit of creditors was subject to revocation and change by the assignor and assignee at any time before the rights of the creditors attached thereunder.

2. SAME—*assignment not revocable as against creditors.* To revoke a deed of assignment after the rights of creditors have attached, the assent of all creditors is essential, in the absence of express statutory provision.

3. SAME—*assets cannot be used to procure assent to discontinuance.* The assent of a majority of the creditors, in number and amount, required by the statute for the discontinuance of insolvency proceedings, must, in view of the controlling principle of the statute that all creditors shall be upon an equality, be voluntary, and the unadministered estate must be restored to the debtor, and not exhausted in procuring the assent.

4. SAME—*rights of assignor and creditors upon discontinuance of proceedings.* Under the Assignment act, (sec. 15,) upon the discontinuance of proceedings the trust created by the assignment is terminated, and the debtor again has his estate liable to be taken in satisfaction of his indebtedness as if no assignment had been made, and each creditor may then proceed against the estate as it existed when the assignment was made.

5. SAME—*when discontinuance of proceedings will be set aside.* A discontinuance of insolvency proceedings, under section 15 of the act concerning voluntary assignments, will be set aside as fraudulent where the assignor has assigned a large portion of the estate to a third person in consideration of the latter's compromising the claims of a majority of the creditors and procuring their consent to such discontinuance.

6. EQUITY—*jurisdiction of, to restore insolvency proceedings fraudulently discontinued.* A court of chancery has power and jurisdiction to restore insolvency proceedings fraudulently discontinued, to their proper place under the Assignment act, for the benefit of creditors, or may require an accounting by all the defendants in respect of any property of the estate coming into their hands, and appoint a receiver and distribute the proceeds.

7. APPEAL—*lies to Supreme Court where decree involves freehold.* The Supreme Court has jurisdiction of an appeal in a suit to set aside as fraudulent a discontinuance of insolvency proceedings and a transfer to a third person of a portion of the estate, where the estate consists wholly or in part of real estate, as a freehold is involved.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. F. M. WRIGHT, Judge, presiding.

This was a bill in equity, in the Superior Court of Cook county, brought August 12, 1891, by Jerome Howe and A. H. Hill, (partners doing business as Jerome Howe & Co.,) and others, complainants, against Everett M. Warren, Gilbert B. Shaw, the American Trust and Savings Bank, and others, defendants. May 5, 1892, the complainants filed an amendment to said bill of complaint, and one J. A. Brown was permitted to come in as an intervening creditor, be made a party co-complainant, and his petition in that behalf, etc., contained and adopted practically all the facts set out in the bill and amendment thereto. The defendants Warren, Shaw and the American Trust and Savings Bank demurred to the bill and amendment thereto, and also to the petition of said J. A. Brown, and amendment thereto. The court sustained the demurrers, and entered a decree dismissing both the bill and the intervening petition of said Brown, and to reverse said decree the said complainants below bring the case to this court by writ of error.

The material facts, as shown by the bill, are, that S. A. Kean, doing business as a private banker in the city of Chicago, under the firm name and style of S. A. Kean & Co., having failed in business and being desirous of providing for the payment of his liabilities, on December 17, 1890, executed and delivered, under and by virtue of the "Act concerning voluntary assignments," etc., to one B. F. Jacobs, as assignee, his certain deed of assignment, thereby conveying to said Jacobs, for the benefit of his creditors, all his real and personal effects, etc., which deed of assignment was on December 18, 1890,

duly recorded in the recorder's office of Cook county, and also in the office of the clerk of the county court of said county. Said Kean, at the date of said assignment, was indebted to complainants Howe and Hill, a firm doing a private banking business at Wenona, Marshall county, Illinois, as Jerome Howe & Co., in the sum of $4796.51, for money deposited before that time in the bank of said S. A. Kean & Co. in Chicago, subject to the draft or check of said Howe & Co., in the usual course of banking business. Steps were at once taken for the administration of the estate under the Assignment law. The assignee, having duly qualified as such, notified creditors of the assignment, in compliance with the statute, and complainants being so notified, within the time prescribed by law and the said notice, presented their verified claim to said Jacobs, as such assignee, and caused the same to be duly filed in the said county court, where the said assignment proceedings were then pending.

It appears from the order of the county court entered July 24, 1891, that petitions had been filed by said Kean, said Jacobs, and a majority, in number and amount, of the creditors, respectively, praying a discontinuance of the insolvency proceedings, and "that all the property and assets of said estate  *  *  *  be ordered turned over to said Everett M. Warren," whereupon, as further appears from said order, the county court, among other things, found that said Kean assented, in writing, to the discontinuance aforesaid, and by appropriate instruments of transfer and conveyance had sold, conveyed, etc., all his right, title, etc., in his estate so as aforesaid assigned under the act, to appellee Everett M. Warren ; that said Kean, in writing, requested the court to make said transfer of the said estate from said Jacobs to said Warren. The court also found that the total amount of claims of creditors against said Kean was $524,857.91 ; that the total number of such creditors was 1031; that a majority thereof, in number and amount,—that is, 534 creditors,

having legal claims amounting, in all, to $301,326.68,—
had, in writing, assented to such discontinuance, and that
all the said estate then undisposed of be turned over to
the said Warren; also found that Jacobs, as assignee,
assented, in writing, to such discontinuance and transfer
of the estate, etc.; that said Warren was legally and equi-
tably entitled to the absolute ownership, possession, etc.,
of all of the said estate, including the books, papers,
vouchers and documents; that the assignee has lawfully
discharged the duties of his office, and that said assign-
ment proceedings should be discontinued, etc. It was
then ordered and decreed that the assignee, Jacobs, at
once set over and convey to said Warren all of said in-
solvent estate, including books, papers, vouchers and
documents; that the said assignment proceedings be dis-
continued; that the assignee be and is discharged, and
that Kean, Jacobs and Warren, or any of them, have
leave to apply to the court for such further orders as may
be necessary to carry out the decree, etc.

It is alleged in the bill, and amendment thereto, that
the said decree discontinuing said assignment proceed-
ings, and ordering the transfer and conveyance of the
estate by the assignee, Jacobs, to said Warren, was fraud-
ulent and void, and entered without the knowledge or
consent of complainants, and that they have ever objected
to it; that the fraud and illegality in and about the pro-
curement and entry of said decree consisted in the con-
spiracy and confederation together of the said Kean,
Jacobs and Warren to defraud the creditors of said Kean,
by making it falsely and fraudulently appear to the
county court that a majority, in number and amount, of
the creditors of said Kean had consented to the entry of
said order discontinuing the said assignment proceedings;
that said false and fraudulent representation consisted
in the fact that said Kean, Jacobs and Warren, their
agents and attorneys, fraudulently procured the allow-
ance in said county court of false and fictitious claims,

etc., and that said conspirators, their agents and attorneys, falsely and fraudulently procured the assent of a large number of the creditors of said Kean, by false and fraudulent representations, to the effect that they, the said creditors, should immediately receive a cash payment upon their claims of thirty-five cents on the dollar, and thereafter probably receive a further payment of fifteen cents on the dollar; that after procuring the assent of said creditors by the means aforesaid, the said Jacobs, Warren and Kean fraudulently refused and failed to pay to numerous of such creditors the money they had agreed to pay, as aforesaid, etc. It is further alleged that the findings in the said order of the county court are false and fraudulent, and were so as aforesaid procured and made for the purpose of cheating and defrauding complainants and other creditors, etc., and while the complainants were not present, in person or by counsel, at the time of the entry of said order, and that they had no notice thereof, etc. Alleges further, that on July 3, 1891, pursuant to the fraudulent scheme and purposes among the said Kean, Jacobs and Warren, and others afterward mentioned, as aforesaid, the said Kean and Warren executed a contract between them, which contract is set out at length, providing, in substance, said Kean being desirous of settling with his creditors, that (1) the said Warren agrees to purchase, at thirty-five cents of their face value, claims legally proved and allowed against the said estate of Kean, not to exceed $367,500, provided that amount can be purchased, by November 1, 1891; but said Warren was not obliged to buy in any of said claims until a majority, in number and amount, of claims of creditors allowed in said court could be purchased at said rate ; (2) by certain agreements of even date it was agreed that all the estate of said Kean aforesaid be transferred to said Warren, the said Warren agreeing to sell and dispose of at least enough of said assets to realize sufficient to reimburse him for money

expended in making said purchases, unlimited power of sale, etc., being given; (3) Warren agrees, after having reimbursed himself for money expended, as aforesaid, and the further payment to him, as compensation, of the sum of $25,000, to transfer, by appropriate conveyance, so much of the estate undisposed of, together with all claims purchased, as aforesaid, to the following persons, viz.: Frank L. Wean, W. P. Fennell, Henry M. Hatfield and Franklin Ganse, or the survivors of them; (4) Warren's compensation to be paid in either or any of three modes, thereafter set out, to be designated by Wean, Fennell, Hatfield and Ganse, or the survivor or survivors of them; (then follow the modes by which Warren is to receive his compensation of $25,000;) (5) Warren agrees that such compensation shall cover all his services, etc.; (6) that after he has reimbursed himself, as aforesaid, he is to retain possession of the assets remaining undisposed of, one year, if requested so to do by said Wean, Fennell, Hatfield and Ganse, etc., and to dispose of the same under their direction, etc.; (7) Warren to have no demand growing out of the purchase of said claims, or against any property of said Kean acquired after December 19, 1890, and not embraced in paragraph 2 of this contract; (8) Warren shall not be held liable, under the contract, for any act or omission, except want of honesty and good faith, but he is nevertheless to purchase said claims as aforesaid; (9) Kean agrees to render all the assistance possible to aid Warren in the performance of the contract, etc.

It is alleged that said agreement was made without any consideration whatever moving from Warren, and that many papers, documents, deeds, etc., belonging to said Kean's estate, made under said contract, (specifying many of them,) were delivered in escrow, together with the said contract, to one Charles L. Hutchinson, to be by him delivered when so directed by the said parties to the alleged conspiracy, and until Warren had purchased at

least $262,500 of the claims of creditors, etc., but that said effects, so delivered in escrow, were all, without the consent or knowledge of Kean, fraudulently turned over to Warren, in pursuance of the conspiracy entered into among all the defendants to the bill, and for the purpose of procuring the control of all the assets of said estate and of dividing the proceeds among themselves, etc. It is then alleged that numerous described pieces of property and assets of said Kean were by said Warren, in pursuance of said corrupt understanding among Kean, Jacobs and Warren, conveyed to other defendants, and chiefly to the American Trust and Savings Bank, or the defendant Gilbert B. Shaw, its president, and to other persons unknown, but that such conveyances were taken with notice, etc.

It is also alleged that by virtue of said assignment, the acts and doings thereunder of the said Kean and Jacobs, and the presentation of the claim of complainants, as aforesaid, "all of the property and assets of the said Kean so assigned by said Kean to Jacobs, * * * then and thereby became and was impressed with a trust, for the use and benefit of orators and like creditors of said Kean, for the payment of their said debts as the same might be proven, and became and was trust property in the hands of said Jacobs, as such trustee, for the uses and purposes aforesaid, and that your orators, in common with other like creditors of the said S. A. Kean who had proven their claims and presented them to said Jacobs, as required by law and by his said notice to creditors, as such assignee, became and were the beneficiaries as *cestuis que trust*, and the equitable owners of all the property, and the proceeds thereof, so in the hands of the said Jacobs, as such trustee, for their use, and that the equitable ownership of orators and other like creditors in and to said property so in the hands of the said Jacobs, and the proceeds thereof, to the full extent of your orators' and other like creditors' claim, became and

was irrevocably attached to said property for the use of orators and other like creditors, as beneficiaries and *cestuis que trust*, under the trust created and established as aforesaid, to the extent of the amount of their said claims against the said Kean." And also, that by the said order and decree of the county court of July 24, 1891, discontinuing the said proceedings in said assignment, "the said Jacobs, as trustee, and your orators and other like creditors of the said S. A. Kean, as beneficiaries and *cestuis que trust*, in and to said trust property," were remitted to the same rights and duties existing at the date of said assignment from said Kean to said Jacobs, as trustee, for the uses and purposes aforesaid, as provided by law, and that "it then and there became and was, and continued to be, the duty and obligation of the said Jacobs, as such trustee, as aforesaid, to so administer, handle and dispose of and account for the proceeds of said property, without the interference or control of the said county court of Cook county, as that your orators and all other like creditors of the said S. A. Kean, who, by proving their claims, had become beneficiaries and *cestuis que trust* in said trust property, should receive as full payment of their several claims as a *pro rata* distribution of the proceeds of said property, faithfully administered and honestly accounted for, would pay, over and above the proper expenses of administration of the same."

The prayer of the bill is for process against defendants, etc.; for an accounting by the said Jacobs of the estate which came into his hands as assignee, and of the estate by him transferred to Warren under the order of the county court; that Warren be required to render an account of the estate to him conveyed by Jacobs under said order of the court, the consideration by him paid, if any, or agreed to be paid, etc.; that upon the incoming of inventories, answers and accountings of the defendants, the court decree all of the said estate and proceeds thereof to be trust property, for the benefit of complain-

ants and other like creditors, etc., and that said Jacobs
and Warren be held to still hold said estate, to the extent
and value thereof, as trustees, for the use and benefit of
creditors, as beneficiaries and *cestuis que trust* therein;
that said Jacobs and Warren be both removed as trustees,
and some suitable person in their stead be appointed, etc.;
that the order of the county court, so far as the same
directed a transfer of said estate to Warren, be declared
null and void, as beyond the jurisdiction of the county
court, and as having been procured by fraud, etc.; and
that the proceeds of said estate necessary for the pur-
pose be applied to a *pro rata* payment of complainants'
claims, as the court may direct, etc.

JOHN M. HAMILTON, for plaintiffs in error:

An irrevocable trust was created by the assignment
deed from Kean to Jacobs.   2 Lewin on Trusts, 664; *Gib-
son* v. *Rees*, 50 Ill. 383 ; 2 Pomeroy's Eq. Jur. sec. 994.

Assignments for benefit of creditors are common law
transfers, and had been in use long before statutes were
enacted concerning them.   *Weber* v. *Mick*, 131 Ill. 532.

The right and power of the debtor to pass the title
to an assignee remain as they were before the statute.
*Hanchett* v. *Waterbury*, 115 Ill. 224.

The creditors obtain a vested interest.   *Gibson* v. *Rees*,
50 Ill. 397; *Bank* v. *Bank*, 94 id. 282 ; *Dwight* v. *Overton*, 32
Tex. 390 ; 110 Pa. St. 581.

It is a conveyance, and not a mere power.   *Graft's
Estate*, 79 Pa. St. 146.

It is valid between parties even though the statute be
not complied with.   *Schuman* v. *Peddicord*, 50 Md. 560.

The creditors' security is an absolute right, as fully
as though each had a mortgage. *In re Stowell*, 26 Hun, 258.

The title vests in the assignee upon the execution of
the instrument.   *Brennan* v. *Wilson*, 71 N. Y. 502; *Weber* v.
*Mick*, 131 Ill. 534.

It is immaterial whether the assignee accepts or not.
It is a trust for the benefit of the creditors, and will not

be allowed to fail by any neglect of the assignee. *Mark's Appeal*, 85 Pa. St. 231.

The right to make the assignment is independent of the statute, but may be affected or modified thereby. *Dehner* v. *Helmbacher*, 7 Ill. App. 50.

It is a good common law trust, and is not affected by a bankruptcy law. *Hawkin's Appeal*, 34 Conn. 548; *Haas* v. *O'Brien*, 66 N. Y. 597; *Boese* v. *King*, 78 id. 471; *Thrasher* v. *Bentley*, 2 Thomp. & C. 309.

The assignment creates a title, and is clearly distinguishable from a mere power or agency created by bankruptcy or insolvency proceedings, or otherwise, by operation of law. *Woodward* v. *Brooks*, 128 Ill. 228; *Weber* v. *Mick*, 131 id. 533; *May* v. *Bank*, 122 id. 554.

The trust property can be followed by a court of equity into the hands of purchasers and assignees who are mere volunteers, or who had notice of the existence of the trust. 1 Lewin on Trusts, 93, 297; 3 id. 1051; *McVey* v. *McQuality*, 97 Ill. 94; 2 Pomeroy's Eq. Jur. secs. 627, 659, 770, 1044, 1048, 1080, and note 1, p. 666.

The jurisdiction of the county court is only to supervise and administer a trust previously created by the act of the assignor. *Farwell* v. *Cohen*, 138 Ill. 216; *People* v. *Chalmers*, 1 Hun, 687.

The county court has no general chancery powers, but only power to distribute the estate. *Hanford Oil Co.* v. *Bank*, 126 Ill. 589.

The remedy is in equity, and not at law. *Hexter* v. *Loughrey*, 6 Gratt. 362.

Before the statute was enacted the jurisdiction in equity was recognized. *Gibson* v. *Rees*, 50 Ill. 397; *Finley* v. *McConnell*, 60 id. 262; *Asay* v. *Allen*, 124 id. 391.

There may be special circumstances under which equity will intervene. *Paddock* v. *Stout*, 121 Ill. 582; *Wilson* v. *Aaron*, 36 Ill. App. 582; *Freydendall* v. *Baldwin*, 130 Ill. 330.

Equity will assume jurisdiction where its intervention is indispensable to preserve rights and property. *Lindauer* v. *Lang*, 29 Ill. App. 190.

The intent of the whole law is to protect the creditors equally, and also to provide a speedy and economical distribution of the estate. *Preston* v. *Spaulding*, 120 Ill. 219.

No shift or artifice giving advantage to any creditor or creditors is to be tolerated. *Heuer* v. *Schaffner*, 30 Ill. App. 339.

A creditor is not to be deprived of his vested right. *Worman* v. *Wolfsberger*, 19 Pa. St. 63.

A plea or claim of prior adjudication is good only as to matters necessarily involved in the issues made by the pleadings. *Kitson* v. *Farwell*, 132 Ill. 339 ; *Cromwell* v. *County of Sac*, 94 U. S. 357.

MORAN, KRAUS & MAYER, for defendants in error:

Prior to the entry of the order of discontinuance, plaintiffs in error had filed their claims and had the same allowed under the assignment. They therefore were in court, and charged with notice of all orders affecting the fund for distribution. *Field* v. *Ridgely*, 116 Ill. 424; *O' Callaghan* v. *O' Callaghan*, 69 id. 552 ; *Petrie* v. *People*, 40 id. 334.

Even were this a direct proceeding to set aside the order of the county court, the allegations of the bill would be totally insufficient. Much less, then, can they avail in the present case, where the attack is clearly collateral. Black on Judgments, sec. 252 ; Van Fleet on Collateral Attack, secs. 5, 12 ; *Commonwealth* v. *Stacey*, 100 Pa. St. 613 ; *Wiley* v. *Pavey*, 61 Ind. 457; *Brown* v. *Insurance Co.* 86 Mo. 51; *Thornton* v. *Hogan*, 63 id. 143 ; *Chapman* v. *Brewer*, 114 U. S. 158 ; *Bank* v. *Rich*, 81 Me. 164; *Humphreys* v. *Swett*, 31 id. 192.

Since the passage of the Voluntary Assignment law of 1877 the county court has general, full and complete jurisdiction in assignment matters, and its orders and decrees therein entered cannot be collaterally attacked. *Freyden-*

*dall* v. *Baldwin*, 103 Ill. 329; *Hanchett* v. *Waterbury*, 115 id. 220; *Field* v. *Ridgely*, 116 id. 424; *Farwell* v. *Crandall*, 120 id. 70; *Preston* v. *Spaulding*, 120 id. 232; *Hanford Oil Co.* v. *Bank*, 126 id. 584; *Wilson* v. *Aaron*, 132 id. 238.

If the court has jurisdiction of the subject matter in any case, it must determine for itself whether it has jurisdiction in a particular case, and if it determine erroneously as to a particular case, the relief is by appeal or writ of error, and not in a collateral proceeding. Black on Judgments, secs. 245, 246, 248; Brown on Jurisdiction, sec. 20, note 2; *Elliott* v. *Piersol*, 1 Pet. 328; *Pursley* v. *Hayes*, 22 Iowa, 33; *Grignon's Lessee* v. *Astor*, 2 How. 319; *Thompson* v. *Tolmie*, 2 Pet. 157; *Ackerly* v. *Parkinson*, 3 M. & S. 411; *Brown* v. *Wood*, 17 Mass. 68; *Smith* v. *Mayor*, 6 Mod. 78; *Brussels* v. *Jacoway*, 33 Ark. 191; *State* v. *Railroad Co.* 1 Rich. 46; *Heldemen* v. *Davis*, 28 W. Va. 324.

The decree of the county court discontinuing the insolvency proceedings and awarding other relief cannot be attacked collaterally for alleged fraud or irregularity practiced in the proceedings in which it was obtained. Black on Judgments, sec. 248; *Commonwealth* v. *Stacey*, 100 Pa. St. 613; *Wiley* v. *Pavey*, 61 Ind. 457; *Brown* v. *Insurance Co.* 86 Mo. 51; *Thornton* v. *Hogan*, 63 id. 143; *Chapman* v. *Brewer*, 114 U. S. 158; *Bank* v. *Rich*, 81 Me. 164; *Humphreys* v. *Swett*, 31 id. 192.

The county court having the right to decide every question that occurred in the case, the errors and irregularities, if any exist in the judgment, should have been corrected by appeal or writ of error. *Swiggart* v. *Huber*, 4 Scam. 364; *Buckmaster* v. *Carlin*, 3 id. 104; *Rockwell* v. *Jones*, 21 Ill. 279; *Mulford* v. *Stalzenback*, 46 id. 303; *Young* v. *Lorain*, 11 id. 624; *Hobson* v. *Ewan*, 62 id. 146; *Gardner* v. *Maroney*, 95 id. 552; *Hernandez* v. *Drake*, 81 id. 34; *Richards* v. *People*, 81 id. 551; *Railroad Co.* v. *Chamberlain*, 84 id. 331; *Goudy* v. *Hall*, 36 id. 313; *Wright* v. *Wallbaum*, 39 id. 554.

When the validity of acts done under a judicial proceeding is collaterally called in question, we have to look

only to the jurisdiction. *Young* v. *Hall,* 36 Ill. 313; *Foster*
v. *Fleming,* 56 id. 457; *Young* v. *Lorain,* 11 id. 637; *Mulford*
v. *Stalzenback,* 46 id. 306; *McJilton* v. *Love,* 13 id. 495; *Good-*
*win* v. *Mix,* 38 id. 115.

SHOPE, J.: It is insisted by plaintiffs in error, that by
the execution of the deed of assignment from Samuel A.
Kean to B. F. Jacobs, and the express acceptance thereof
by said Jacobs, as assignee, for himself and successors
therein, there was created an irrevocable trust, imposed
upon all the assigned estate, and which, notwithstanding
the order of discontinuance of the assignment, is still
subsisting, and enforceable in equity for the benefit of
all of Kean's creditors; that the order of discontinuance,
which, it is conceded, remitted the parties to the same
rights and duties existing at the date of the assignment,
was ineffectual to destroy the trust in favor of creditors
created by the deed, and that the further order of the
county court, under and by which the estate of Kean was
transferred to the defendant in error Everett M. Warren,
was void. On the other hand, it is as strenuously con-
tended that the parties were remitted, by the order of dis-
continuance, to the same rights that existed at the date
of the assignment; that the trust created by the deed of
assignment was extinguished, and that Kean, the assignor,
had a right to convey the property therein described, and
undisposed of by the assignee, to said Warren, and that
the county court was authorized by the statute to make
an order directing the transfer and conveyance of said
property by the assignee, Jacobs, to said Warren, ac-
cordingly.

In our opinion neither of these contentions can be sus-
tained. The questions presented are of more than ordi-
nary importance, and consideration of them requires a
construction of section 15, in force July 1, 1879, amenda-
tory of the "Act concerning voluntary assignments," etc.,
of 1877. (Hurd's Stat. 1893, chap. 10.) That section pro-

vides that "all proceedings under the act of which this (section) is amendatory, may be discontinued upon the assent, in writing, of such debtor and the majority of his creditors, in number and amount; and in such cases all parties shall be restored to the same rights and duties existing at the date of the assignment, except so far as such estate shall have already been administered and disposed of; and the court shall have power to make all needful orders to carry the foregoing provision into effect."

Deeds of assignment, prior to the enactment of the Voluntary Assignment act, were in common use in this State, and it will be well to consider the nature and effect of such an assignment. In England, deeds of assignment, as it seems, are of two kinds: deeds of assignment or of arrangement with creditors, and voluntary deeds of agency. The former were executed by the debtor and creditor, and were held to be irrevocable. The latter, to which the creditor is not a party, and which were executed only by the debtor and the trustee to whom the debtor conveys his property, to be applied to the payment of his debts, or otherwise, as the debtor may direct, were held to be revocable or not by the assignor, according to the position in which the estate is, and the rights of creditors under the assignment, at the time of the attempted revocation. (*McKenna* v. *Stewart,* 20 L. J. Ch. 49.) That is, the doctrine in the British courts appears to be, that where the creditors, under a voluntary deed of agency, on notice thereof from the trustee, have manifested unequivocal assent thereto, and by presenting their claims to the trustee, or by performing some act by which their position has become materially changed or by which they will be warranted in looking to the fund in the hands of the trustee for the payment of their debts, the deed of assignment is regarded as irrevocable. (*Acton* v. *Woodgate,* 2 M. & K. 492; *Siggers* v. *Evans,* 32 Eng. L. & Eq. 139; *Brown* v. *Cavendish,* 1 Jones & L. 606; 2 Pomeroy's Eq. Jur.

sec. 993.) On the other hand, it seems to have been held that, at any time prior to the rights of the creditors actually attaching under the assignment, the deed, not being signed by the creditors, might be corrected, altered or revoked, at the instance of the assignor. (*Girrard* v. *Lord Lauderdale*, 3 Sim. 1; *Walwyn* v. *Coutts*, 3 Mer. 707, and 3 Sim. 14; *Johns* v. *James*, (L. R.) 8 Ch. Div. 744; *Brown* v. *Cavendish, supra.*) But it appears that the holdings are not entirely uniform.

In the United States, assignments for the benefit of creditors have generally been of one kind, and required to be executed only by the assignor and accepted by the trustee. As a general rule, the express assent or joinder of the creditors, as parties to the making of the assignment, has not been regarded as essential to its validity. "The prevailing doctrine," says Burrill, (Law of Assignments, 6th ed. 459, 460,) "was, that an assignment in trust for creditors, executed and delivered by the assignor and accepted by the assignee, creates at once the relation of trustee and *cestui que trust* between the assignee and the creditors,. and cannot be revoked by the assignor, or by the joint act of the assignor and the assignee. * * * Thus, after the rights of the creditors have once actually attached, or after notice of the assignment to those provided for by it, or after notice by creditors to the assignee of their desire and intention to avail themselves of the assignment, or after they have taken steps to enforce the trust, as by filing a bill praying for the distribution of the fund according to the provisions of the deed, or after any of the trusts have been actually executed, it is too late to revoke the assignment." And this seems to be the general doctrine, and has received the approval of this court in *Gibson* v. *Rees*, 50 Ill. 383, where it was held, that where the trust, under a deed of assignment for the benefit of creditors, "is accepted and the trustee enters upon the discharge of the trust, so long as it remains in force, or where the creditors are parties to the instru-

154—16

ment, or have presented their claims to the trustee and given him notice that they look to the fund for payment, it is binding upon all parties in interest, and a court of equity will entertain jurisdiction and carry the trust into effect." And it was there said, that "a power created by a deed of this character may be revoked and the trust destroyed by an arrangement between the grantor and the trustee. * * * But to be effectual it must occur before the creditors have manifested their assent by presenting their claims to the trustee, or in some manner manifest their assent, or do some act entitling them to rely upon the fund for the payment of their claims." See, also, 2 Pomeroy's Eq. Jur. sec. 994; 2 Lewin on Trusts, *515, and cases cited.

It seems clear that prior to the passage of section 15, before quoted, and its becoming part of the act of 1877, the law in this State was, generally, that a deed of assignment for the benefit of creditors, executed in the usual form by the assignor, was subject to revocation and change by the assignor and assignee at any time before the rights of creditors attached thereunder. On the other hand, if by any of the modes indicated, or their equivalent, the rights of creditors had attached, the deed was binding upon all the parties, and irrevocable. (*Wilson* v. *Pearson*, 20 Ill. 81.) In such cases, it is manifest that it would require the assent of all the creditors to set aside the deed of assignment and restore the property to the debtor. We need not call attention to the fact that in a vast number of cases, where a majority of creditors deemed it to the interest of the estate and were willing to again trust the assignor with his property, it would be advantageous to all concerned, and beneficial to the creditors as well as the debtor, that the latter should again be put in control of his estate and entrusted with its management and disposition. The evident purpose of section 15 was to enable a majority of creditors, in number and amount, to join with the assignor in a revocation

of the deed of assignment, and thus restore the assignor to his unadministered estate, with all the rights, obligations and duties resting upon him prior to the assignment becoming effective, and restoring the creditors to all their rights as they existed at the date of the assignment. There can be no question as to the propriety or the advantage, both to the community at large and the persons directly interested, of releasing the estates held under deeds of assignment as soon as was practicable. To this end, if no other, the legislature, presumably recognizing the law as it theretofore existed, enacted section 15, and provided a mode by which assignment proceedings might be terminated, and necessarily rendering such assignments, at any stage of the proceedings, revocable, and again possessing the debtor of his estate, and leaving the matter of the adjustment of his debts with him and his creditors, except so far as the application of his estate had been made under the assignment as it existed before the assignment had been made.

The right of the debtor to make an assignment of his estate for the benefit of creditors exists independently of the statute, for while the English bankruptcy and insolvency laws do not seem to have been adopted by the early settlers of this country, suitable insolvency laws have always existed, and for voluntary assignment for the benefit of creditors, and the principles which govern them are, in many particulars, at least, the product and growth of American common law. (3 Parsons on Contracts, *432; Burrill on Assignments, secs. 1, 2; *Hanchett* v. *Waterbury*, 115 Ill. 220.) The purpose and effect of the Voluntary Assignment act are to control the assignment and distribution of the estate to and among creditors. It declares all provisions therein by which preferences are given shall be void, and provides for the administration of the estate by and under the direction of the county courts, and all voluntary assignments made in this State are to be administered under and in accordance with its

provisions. The act confers upon county courts original jurisdiction, in all cases of voluntary assignments, to administer and control the trust, to allow and adjust the claims of creditors, and to distribute the funds derived from the estate equitably among all creditors who shall prove their claims in accordance with the provisions of that act. (*Preston* v. *Spaulding*, 120 Ill. 208; *Farwell* v. *Cohen*, 138 id. 216, and cases *supra*.) And in proceedings under that act the jurisdiction of the county court is exclusive, and after jurisdiction of the assigned estate has attached no other court will interfere, except where the circumstances are such as to require the interposition of a court of equity to prevent an absolute failure of justice. *Hanchett* v. *Waterbury, supra; Preston* v. *Spaulding, supra; Field* v. *Ridgely,* 116 Ill. 424.

By the amendatory section now under consideration, authority is given to enter an order discontinuing assignment proceedings in the county court at any time, upon the assent, in writing, of the debtor and of a majority of the creditors, in number and amount. The legislature evidently contemplated that the assent of a majority of the creditors, in number and amount, would be sufficient warrant for assuming that the debtor, upon being restored to his property, would faithfully and honestly administer it, and that the interests of the debtor and creditors alike would be promoted by the restoration of the estate to the debtor, and that otherwise a majority of the creditors would withhold their consent. As we have seen, prior to the passage of this section, if the creditors had proved their claims, or otherwise indicated a clear intention to look to the fund for the payment of their claims, the assent of all was required to enable the assignee and assignor to revoke the deed. By this section the legislature has made the assignment, in effect, revocable by the assent of a majority, in number and amount, of the creditors who may have proved their claims in accordance with the provisions of the statute. Before, a single cred-

itor could have prevented the revocation ; now, a minority
of the creditors, in number and amount, must submit to a
restoration to the debtor of his estate, and to be them-
selves remitted to their rights as they existed at the date
of the assignment, if the assignor and a majority of the
creditors, in number and amount, assent to the discon-
tinuance of the proceedings under the assignment. Analo-
gous provisions are made in various of the acts providing
for public parks, driveways and boulevards in the cities
of the State, by which park commissioners are authorized
to take possession of streets of the city, etc., upon con-
sent of the city and a majority of the owners of frontage
upon the streets sought to be taken.   But it is obvious
that the purpose of the discontinuance was to restore the
unadministered property to the debtor, leaving it liable
for the payment of claims of the creditors as it was at
the date of the assignment, and that the assent required
was to the restoration of the estate to the debtor, leav-
ing all the creditors upon an equality, both so far as the
estate had been administered and in respect of that por-
tion of it restored to the debtor.

It is expressly provided that all preferences provided
for by the deed of assignment shall be void, and the con-
trolling principle of the act is, that the creditors shall
be upon an equality, and that the estate shall be dis-
tributed among all the creditors upon that basis.   This
has been so repeatedly held that citation of cases will be
unnecessary.   And it follows, necessarily, that the as-
sent of a majority of the creditors, in number and amount,
should be voluntary, and that the estate unadministered
shall be restored to the debtor, and not that it shall be
exhausted in procuring such assent, otherwise the mani-
fest purpose of the statute would be defeated.   If a debtor
may make an assignment, and then use his estate to buy
up the claims of the majority of his creditors, in number
and amount, and thereby procure a discontinuance, the
effect is to give a preference to such creditors, in direct

violation of the spirit and letter of the statute. The pro-
visions of the act are perverted to the perpetration of a
fraud upon the minority creditors, and the whole estate
given to such preferential creditors as the debtor may
select, provided, only, that they are a majority in num-
ber and in the amount of their claims.

Under the law all preferences are to be declared void,
and the estate distributed by the assignee, under the
orders of the county court, to all the creditors, in pro-
portion to the amount of their claims proved. The as-
signee proceeds, in the collection and distribution of the
estate, under the orders of the court. When a majority
of the creditors, in number and amount, have assented to
a discontinuance of the proceedings in the county court,
the estate not administered is to be restored to the
debtor,—that is, all of the parties, the assignor and the
creditors, are remitted to their rights and duties as they
existed at the date of the assignment. It is too clear for
argument that any scheme or device by which the unad-
ministered estate of the debtor is disposed of in procuring
the assent of a majority of creditors is in direct viola-
tion of the spirit and letter of the statute, and a fraud
upon the minority creditors. The plain meaning and
intention of the section under consideration are, that
whenever a majority of the creditors, in number and
amount, deem it to the best interests of the creditors
that the assignment proceedings shall be discontinued,
they may assent thereto, and the discontinuance, with
the assent of the assignor, may be had. It does not mean,
nor will it bear the construction, that the estate may be
exhausted, or any portion of it, in procuring such assent;
and upon the discontinuance it is clearly contemplated
that all creditors of the estate shall stand upon the same
footing, and it must be held that any arrangement, scheme
or device by which the estate, or any portion of it, is
used to procure such assent, and the rights of all the
creditors as they existed at the date of the assignment

are not restored, is fraudulent and void as to such creditors. The provision is, that upon the discontinuance, "all parties,"—that is, parties having rights under deed of assignment,—"shall be restored to the same rights and duties existing at the date of assignment, except so far as such estate shall have already been administered and disposed of." So far as the estate has been administered and disposed of it is to be regarded as settled. That portion of the estate has been applied as in the manner contemplated by the statute, and so far the parties are bound, and no farther. Upon the discontinuance the duties of the assignee necessarily cease, except so far as may be necessary to remit the parties to their rights as they existed before the assignment, in respect of the residuum of the estate. Upon this being done, the debtor again has his estate, except so far as administered, liable to be taken in satisfaction of his indebtedness, precisely as if no assignment had been made, and each creditor stands upon the same footing of right to proceed against such estate as such right existed when the assignment was made.

No inconsiderable portion of the briefs is devoted to a discussion of the meaning of the phrase, "at the date of the assignment." We do not regard this of controlling importance, for whatever construction may be given it,— that is, whether it means "before," "after" or "at the time of" the assignment,—the same result will necessarily follow.

It is, however, insisted, that "at the date of the assignment" means "after" the date of the assignment. This construction is, in our judgment, not admissible. In its customary acceptation, the word "at" is generally understood to mean "at the time of,"—not before or after,— and expresses the relation of presence and nearness in either place or time. "At the date of the assignment" would necessarily mean at the time when it was in condition to become, but had not in fact become, effective as an assignment under the statute. We are of opinion that

it means the rights and duties as they existed when the assignment was made, and that would necessarily mean prior to or up to the date of the assignment becoming operative. This has been the generally accepted construction both by the bench and bar.

It is contended by plaintiffs in error, as before stated, that the discontinuance remitted the parties to the same rights and duties existing immediately *after* execution of the deed of assignment, and that although the administration of the estate in the county court ceased upon the entry of the order of discontinuance, the trust remained unrevoked, and enforcible in equity. We are not prepared to concur in this view. If this were so, an assignment for the benefit of creditors could not in fact be discontinued and the trust dissolved. Although legally discontinued in the court having exclusive jurisdiction thereof, in full compliance with the statute, it would remain subject to be enforced in another forum by any creditor who might be dissatisfied, and thereby the evident intention and purpose of the legislature in remitting the residuum of the estate to the debtor, and restoring all of the parties to their rights as debtor and creditor, would be thwarted. Upon the discontinuance being lawfully entered, the parties are restored to their rights and duties as the same existed when the assignment was made. The debtor has the estate remaining, and when reconveyed to him under order of the court he would have the possession and *jus disponendi* of the property, and the creditors have their claims, with right of action thereon, precisely as if no assignment had been made. In other words, the effect of the discontinuance is to destroy the trust upon which the property was held, so far as it remained unadministered, and a majority of the creditors having assented, can claim no further right under the assignment.

Undoubtedly cases may arise which would justify the interposition of a court of equity to enforce a trust aris-

ing collaterally. But we are of the opinion that the
ground of equitable jurisdiction cannot, in this case, be
placed upon the necessity of enforcing the trust created
by the deed of assignment. In our opinion there is in
this case, however, ample authority for the interference
of a court of equity. By the order of the county court,
entered upon the petitions of the assignee and assignor
and a majority of the creditors, in number and amount,
the assignment proceedings were discontinued, and the
court having found that the estate unadministered had
been transferred by Kean to Warren, ordered the assignee,
Jacobs, at once to transfer, convey and assign to Warren
all of such residue of the estate. It is alleged, in effect,
that under and by certain contracts entered into between
said Kean and said Warren, of date of July 3, 1891, as
shown in the foregoing statement, a scheme was entered
into, by and with the knowledge and collusion of the
assignee, Jacobs, whereby Warren obligated himself, in
consideration of the payment to him of $25,000 and reim-
bursement of all moneys expended by him in furtherance
of the scheme, to buy up, between the date of the con-
tract and November 1, 1891, at the rate of thirty-five per
cent of their face value, claims of creditors proved in the
county court, amounting at least to $262,500, and not to
exceed in amount $367,500. Warren succeeded in procur-
ing the claims of 534 creditors who had proved their
claims in the county court, amounting to $301,326.68, and
constituting a majority, in number and amount, of the
creditors who had proved their claims, and also procured
their consent to a discontinuance of the proceedings.
Whether the creditors were in fact paid does not clearly
appear by the bill, but the allegation is, that the contract
was that they were to be paid at the rate of thirty-five
per cent of their claims. It was further stipulated and
agreed among said parties entering into said combination
that the estate should be conveyed to Warren for the
purpose of paying him his $25,000 compensation for carry-

ing it out, to reimburse him for his expenditure, etc., and that the residue, if any, should be conveyed by him to certain designated persons. It is also clear that these proceedings were carried on surreptitiously, and that the effect was to divert the estate from the hands of the assignee into the hands of Warren, for the purpose, first, of paying Warren $25,000 for his services; second, of repaying the money advanced by him in buying up the claims of a majority of the creditors, in number and amount; and third, for the conveyance of the residue of the estate to parties and corporations designated by the assignor, and thereby disposing of the entire estate. It might be remarked that no attempt had been made in the interim to administer or close up the estate in the hands of the assignee, and the effect is, if this gigantic scheme shall be permitted to prevail, that 497 of the creditors of Kean who had proved their claims in the county court in the assignment proceedings, and aggregating $223,326.68, are, under what is claimed to be in the form of law, defrauded of all participation in the estate, and thereby property aggregating many hundred thousand dollars has been, by the fraudulent conduct of the assignor and assignee, diverted from the just and equitable distribution contemplated by the statute, to the payment of certain creditors, and for the benefit of certain beneficiaries designated by the assignor. Of the 497 creditors who are actually defeated of any participation in the estate, and upon whose claims not one cent has been paid, none had actual notice of the proceedings in the county court by which the estate was thus diverted.

By the contract between Warren and Kean, the performance of which on the part of Warren seemed to have been guaranteed by the American Trust and Savings Bank, as before mentioned, the estate, of every kind and description, was to be assigned and transferred to Warren, he to dispose of sufficient thereof to reimburse him the sums expended by him in the purchase of the claims

of creditors and to pay himself his compensation of $25,000, and then to transfer, by appropriate instruments of writing, all of the remainder of the estate to the persons designated, or the survivors of them, or, in their discretion, to retain possession of the estate and dispose of it as they should direct. Said contract, together with certain conveyances, and the written consent and petition of Kean for the discontinuance of the proceedings in the county court, the petition of Kean consenting to the resignation by Jacobs as assignee, and requesting in his stead the appointment of the American Trust and Savings Bank, and a petition by Kean asking for the transferring of all of the assets of the estate to Warren by the assignee, the written resignation of Jacobs as assignee, the written consent of Jacobs to the discontinuance of the proceedings, and other papers, were delivered to Hutchinson in escrow, to be delivered to Warren when he had purchased $262,500 worth of proved claims against the estate, the purpose being that he should purchase in enough of the claims to procure the order of discontinuance. The conveyance of the property to Warren was without consideration, other than the contract on his part before mentioned. Upon procuring the requisite amount of indebtedness, the papers before mentioned as having been placed in escrow were delivered to Warren. It is alleged in the bill that immediately upon the entry of the order of discontinuance in the county court, and the order directing the assignee, Jacobs, to transfer and convey all the assets of the estate to Warren, the said Jacobs, as such assignee, did make such transfer and conveyance to Warren, and that the latter entered into possession thereof, and that almost immediately thereafter Warren assigned and conveyed the property to the American Trust and Savings Bank, and Gilbert B. Shaw, its president, and to others unknown to the complainants.

From what has preceded it is apparent we are of the opinion that the order of the county court authorizing

the conveyance by the assignee to Warren, for the pur-
pose set out in said agreement of July 3, 1891, was im-
properly made. While the court is authorized, by the
section of the statute under consideration, to make all
such orders as may be necessary or proper to remit the
parties to their rights and duties as they existed at the
assignment, it was powerless to make an order the pur-
pose and effect of which were to divert the property to
the benefit of particular creditors or of strangers. Be
this as it may, without extending this opinion by further
discussion of the frauds practiced, they furnish ample
grounds for interposition of a court of equity. That the
consent by which the orders of court were obtained was
fraudulent as against the complainants, if the allegations
of this bill be true, cannot admit of question, and it is
too familiar to require the citation of authority or extend
the discussion, that a court of equity will interpose its
power to prevent the consummation of fraud upon per-
sons appealing to its jurisdiction. Every conveyance of
property, by whatever means it is done, is in equity viti-
ated by fraud, and it cannot avail that relief may exist
at law, if the remedy in equity is more adequate and com-
plete. (*Babcock* v. *McCamant*, 53 Ill. 214 ; *Wampler* v. *Wamp-
ler*, 30 Gratt. 459 ; 2 Pomeroy's Eq. Jur. 919.) The latter
author says : "The equitable jurisdiction to cancel and
set aside, or to resist judgments and decrees of any court
which have been obtained by fraud practiced upon the
court and the losing party, is well settled and familiar."
Sec. 919, note 3 ; *Preston* v. *Spaulding*, 120 Ill. 208.

No reason exists why a court of equity will not inter-
fere to prevent a failure of justice in a case where fraud
has been perpetrated in procuring a discontinuance of
the assignment. A court of equity in this case will, be-
cause of the fraud upon the court and upon the minority
of creditors, intervene, and set aside the order authoriz-
ing the conveyance of the property to Warren, and, if
need be, the order of discontinuance as well, and remit

the parties to an administration of the estate in the county court, or, having obtained jurisdiction for one purpose, will proceed, as in *Preston* v. *Spaulding*, to collect and distribute the fund according to equitable principles, —and especially in a case where the assignee and assignor have contributed to the fraud would the latter be the better practice.

If the allegations of this bill are proved, a court of equity should not hesitate to set aside the transfer of the property to Warren and others and require them to account therefor. Kean, being a debtor in failing circumstances, could not give away his estate to the prejudice of his creditors ; and the contract under and by which Warren was to receive $25,000 for his services out of the estate being, as we have seen, fraudulent as to complainants and other of the minority creditors, he could take nothing by virtue of this contract, and would, in equity, be required to account for the amount coming to his hands. And if it be true and the court shall find that any of the creditors of said Kean have compromised and settled their claims against his estate, they and their assigns, whether at law or in equity, would be bound by such settlement, and be entitled to no further interest or share in said estate. It is not necessary here to determine whether Warren, in his accounting for the properties and moneys coming to his hand, should be entitled to credit for the sums advanced by him or not. It may well be that he, being a mere intermeddler and a participator in the fraud, would not be entitled to such credit, or only entitled to it after payment of the minority creditors. In the present state of the record it is unnecessary, and we refrain from expressing an opinion in respect thereof.

It is also insisted that this court has no jurisdiction on direct appeal. This is a misapprehension. The effect of the order entered in accordance with the prayer of this bill would be to divest Warren, and those claiming by, through or under him, of the title to the realty trans-

ferred by the assignee to said Warren. It is, we think, clear that a freehold is shown by this bill to be involved.

We are of opinion that the contract entered into between said S. A. Kean and Everett M. Warren ; the purchase thereunder by the latter of a majority of the claims of creditors, in number and amount, and his compensation therefor and payment therefor out of the estate ; the procurement of the order discontinuing the assignment proceedings, the assent of Kean as assignor, Jacobs as assignee, and of the majority of the creditors thereto, and the further order directing the transfer, etc., by the assignee, of the estate undisposed of, to Warren ; the further transfer, etc., by Warren to the American Trust and Savings Bank and Gilbert B. Shaw, its president, and the transfer of any part of said estate or the assets to any of the defendants named, or to others chargeable with notice of the fraud,—are all fraudulent and void, and that a court of chancery has ample and complete power and jurisdiction, if, upon the final hearing, the facts alleged are found to be sustained by the proofs, to restore the estate to its proper place under and as contemplated by the Assignment act, for the benefit of creditors, except those found by the court to have been already paid, or the court of equity may require an accounting therein by each and every of the defendants, and others who may be properly made defendants, in respect of any property or assets of the estate coming into their hands by or through said Warren, and may appoint a receiver of the property, assets, etc., of said estate, and administer and distribute the proceeds of the same among creditors, according to equitable principles.

The decree of the court below sustaining the demurrers and dismissing the bill and amendment will accordingly be reversed, and the cause remanded to that court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MAGRUDER, J.: I concur in the conclusion reached by this opinion, but not in the reasoning of the opinion.

BAKER, J. (separate opinion): I concur in the conclusion reached by the opinion of Mr. Justice SHOPE, and in almost everything that is said in that opinion. I do not, however, agree with the statement made therein "that the ground of equitable jurisdiction cannot, in this case, be placed upon the necessity of enforcing the trust created by the deed of assignment." A trust was created by the deed of assignment. If a discontinuance had been lawfully entered under section 15 of the statute, the result would have been to destroy the trust upon which the property was held by the assignee, except so far as the estate had already been disposed of and administered. But a lawful discontinuance could only be accomplished by returning the unadministered property to S. A. Kean, the assignor, and rendering it liable to the demands of his creditors generally, thereby restoring all parties to the same rights and duties existing at the date of the assignment. Turning the property over to Everett M. Warren was in plain violation of the requirement of the statute, and a manifest and palpable fraud upon the statute and upon the rights of the minority, in number and amount, of the creditors of Kean. That which the statute absolutely required should be done was not done, and therefore no valid discontinuance and release from the trust were worked. The property, at least so far as the rights of the minority, in number and amount, of the creditors are concerned, was not freed from the trust created by the deed of assignment. A court of equity has full power, authority and jurisdiction to enforce that trust in their behalf, and I do not clearly see how it can be that these minority creditors can have any standing in a court of chancery, unless it be either upon the ground of a still existing trust, or upon the ground that they have exhausted their remedies at law and stand in the attitude of judgment creditors.