## Philip D. Armour et al. v. Henry F. Gold et al.

1. VOLUNTARY ASSIGNMENTS—*Fraud in Procuring the Assent of a Majority of Creditors to a Petition for a Discontinuance.*—Any scheme or device by which the unadministered estate of an insolvent debtor is disposed of, in procuring the assent of a majority of his creditors to the discontinuance of the proceedings, is a direct violation of the statute and a fraud upon the minority creditors.

2. SAME—*Construction of the Statute.*—The statute relating to voluntary assignments contemplates that all creditors of an insolvent debtor shall stand upon the same footing, and that the rights of all the creditors, as they existed at the time of the assignment are to be restored when the proceedings are discontinued, except in so far as the insolvent estate has been administered and disposed of by the County Court.

3. SAME—*Power of the Court to Discontinue the Proceedings.*—The County Court has power to discontinue proceedings, under the act relating to voluntary assignments, upon the petition and assent of a majority in number and amount of the creditors petitioning for such discontinuance, provided there is no fraud connected with the procuring of such assent.

4. SAME—*Effect of an Order of Discontinuance.*—By an order of discontinuance entered in the County Court, under this statute, an insolvent assignor is reinvested with the title and possession of his property as fully and to the same extent as before the assignment, and each creditor is in a position to establish his claim at law to the same extent as if no assignment had been made.

**Voluntary Assignments.**—Appeal from the County Court of Cook County; the Hon. JOHN H. BATTEN, Judge, presiding. Heard in this Court at the March term, 1899. Affirmed. Opinion filed November 2, 1899. Rehearing denied November 20, 1899.

**Statement by the Court.**—July 7, 1898, Gold & Brother, a copartnership composed of Henry F. Gold and Fred H. Gold, made a voluntary assignment of all their partnership property, except their real estate, for the benefit of their creditors.  The assignment was filed in the County Court of Cook County on the same day, and said court proceeded with the administration of the insolvent estate until October 29, 1898, when the proceeding was discontinued upon the petition of the insolvent, the assignee having fully accounted and being discharged, and all the assets of the insolvent estate then in his hands were ordered turned over to the insolvents.  From this order the appeal herein is taken.

The total receipts of the assignee during the course of the administration of the estate were $5,614.82, and there was left in his hands, after deducting all his disbursements, including his fees and attorney's fees, at the time of the discontinuance, $3,997.90, besides uncollected accounts due to said insolvents aggregating more than $4,800, which the assignee reported he was unable to collect without suit, and that because the accounts were small he recommended that they be sold.

Sixty-five creditors filed claims within the time required by law, under notice in that regard given by the assignee, which aggregated $8,453.13.   Among these claims was that of appellants, which amounted to $329.74, and was admitted to be correct.

October 26, 1898, the insolvents filed their petition for the discontinuance, from which and the order of the County Court thereon it appears that Gold & Brother, on October 14, 1898, sent a letter to all of their creditors, except to two named Schlacks and Whelpley, to whom they owed certain rents, but the amount owing was contested.

This letter, after stating that they desired a settlement with their creditors, the amount of claims filed, the amount in the hands of the assignee and the probable cost of administration, is as follows :

" We are of the opinion that if the estate now in the

hands of the assignee can be returned to us, we can so manage it that we can pay to our creditors fifty (50) per cent of their claims. It may be that we will require some assistance. That we have provided for. We therefore make this proposition : We will pay to our creditors, except our former lessors, fifty (50) per cent of their respective claims, provided that they will agree within seven days to accept that sum in full settlement, the same to be paid on or before October 31st, 1898. This offer is conditioned on the assignment proceedings being dismissed and the money and property returned to us.

"We herewith submit the assurance of Mr. R. J. Street, cashier of the First National Bank of Chicago, that security has been deposited with him that the above proposition will be performed."

Attached to this letter is a certificate by said Street that he held the sum of $4,500, which was deposited with him by Charles A. Zahn as security for the faithful performance of the undertaking and conditions made by Gold & Brother to their creditors, as contained in said letter, and that if said insolvents should fail to pay as proposed in said letter to any creditor accepting the conditions therein stated, such creditor should have recourse against the money deposited with him. To this letter of insolvents and statement of Street, the consent in writing of said Zahn was attached, as was also an acceptance of the proposition contained in the letter, and a written consent that the assignment proceedings of the insolvents might be dismissed, the assignee discharged, and all assets of the estate returned to Gold & Brother, signed by the names of fifty-one creditors, whose claims aggregated $6,253.28.

It appears from the evidence before the County Court, produced on the hearing of insolvents' petition, that they, the insolvents, proposed to pay all creditors consenting to the discontinuance fifty per cent in settlement of their claims out of the funds ordered to be turned over to them by the assignee; also that all the creditors of the insolvents (including appellants), except their landlord and another who could not be found, also a landlord, had an opportunity to accept fifty cents on the dollar of their claims, but it was

explained to them that they could only be paid that amount in case they consented to the discontinuance, and that the payment was expected to be made out of the funds in the hands of the assignee. It further appears that the money deposited by Zahn with Street was not to be paid back to him by the assignee, but was to be returned to him by Street after Gold & Brother had paid their creditors who gave their consent to the discontinuance.

Alfred R. Urion and Abram B. Stratton, attorneys for appellants.

Cratty, Jarvis & Cleveland, attorneys for assignee.

Mr. Justice Windes delivered the opinion of the court.

Appellants contend that the "consents signed by the creditors were unlawfully procured; were not the voluntary acts of the signers thereof; were consequently void, and the order entered in pursuance thereof was unauthorized."

Sec. 15 (Ch. 11) of the act relating to voluntary assignments in this State is as follows:

"All proceedings under the act of which this is amendatory may be discontinued upon the assent, in writing, of such debtor, and a majority of his creditors, in number and amount; and in such case all parties shall be remitted to the same rights and duties, existing at the date of the assignment, except so far as such estate shall have already been administered and disposed of; and the court shall have power to make all needful orders to carry the foregoing provisions into effect." (Hurd's Stat. 1897, p. 174.)

The power of the County Court relating to the discontinuance of proceedings therein involving voluntary assignments has been several times considered by this court and also in the Supreme Court. The cases in this court need not be referred to, as we are of opinion that the Supreme Court decisions are such as to control the case at bar.

The following are the Supreme Court cases referred to: Howe v. Warren, 154 Ill. 227; Terhune v. Kean, 155

Id. 506; Am. Exch. Bk. v. Walker, 164 Id. 135; Stoddard v. Gilbert, 163 Id. 131; Kelley v. Leith, 176 Id. 311.

The first four of these cases announce the doctrine, in substance, that any scheme or device by which the unadministered estate of the debtor is disposed of in procuring the assent of a majority of creditors to the discontinuance of the assignment proceedings, is a direct violation of the spirit and letter of the statute and a fraud upon the minority creditors; also that the statute contemplates that all creditors of the estate shall stand upon the same footing, and that the rights of all the creditors, as they existed at the date of the assignment, are to be restored when the proceedings are discontinued, except in so far as the insolvent estate shall have already been administered and disposed of by the County Court.

In each of those four cases referred to, the property was not returned to the insolvents, and all the creditors were not remitted to the same rights and duties as existed at the date of the assignment, except in so far as the estate had been previously administered; but the remaining insolvent estate, in each case, immediately, on the discontinuance of the assignment proceedings, was given over to some third party or to a trustee, under an arrangement which deprived certain creditors of their legal right to resort to it for the payment of their claims. It was not returned, and the title and possession thereof reinvested in the insolvents.

In the Kelley case, *supra*, the Supreme Court review all the above cases, except the Stoddard case, distinguish them from the one then under consideration, and say: " In the absence of fraud connected with the procurement of the assent of a majority, in number and amount, of creditors petitioning for such discontinuance, the above statute fully authorizes a County Court to discontinue such assignment proceedings, upon compliance with its provisions.

" In this case the original debtors, by an order of discontinuance entered by the County Court of Cook County, were reinvested with the title and possession of all of their

property as fully and to the same extent as before the assignment. Appellant, under the order of the court, was then in a position to establish his claim at law, if one existed, and to proceed against the property of the debtors as fully and to the same extent as though an assignment had not been made or an order of discontinuance entered."

We are of opinion that the Kelley case and the one at bar are identical in principle. Here, as in that case, there was no fraud; every creditor, except the ones whose claims were disputed, had an opportunity to get the same amount on their claims as did the consenting creditors; except that in the Kelley case the creditors were to be paid in full instead of fifty per cent, as in the case at bar. There was no concealment in this case. The assets of the estate were kept intact and ordered turned over to the insolvents by the order of discontinuance, and they were reinvested with the title and possession of all their property, not exhausted in the previous administration, to the same extent as before the assignment. That is all that the statute requires. Appellants were at full liberty to pursue the estate so turned over to the insolvents to the same extent as before the assignment.

The fact that the assignors expected to pay the promised fifty per cent of their claims to the consenting creditors when they received back their property from the assignee, does not, in our opinion, invalidate the discontinuing order.

No part of the insolvent estate was appropriated to the payment of the consenting creditors, nor were they given any lien upon it, and appellants were deprived of none of their legal rights.

The order of the County Court is therefore affirmed.