# American Exchange National Bank v. James H. Walker.

1. VOLUNTARY ASSIGNMENTS—*Not Revocable as Against Creditors.* —To revoke a deed of assignment after the rights of creditors have attached, the assent of all creditors is essential, in the absence of express statutory provision. Howe v. Warner, 154 Ill. 227, followed.

2. SAME—*Preferences Not to be Given.*—The unadministered estate of an insolvent under the statute concerning voluntary assignments, can not be lawfully appropriated for the purpose of purchasing a majority of claims against the estate and thereby procure a discontinuance of the assignment proceedings and a payment in full of certain creditors to the exclusion of others. So doing, is in effect to give a preference to one set of creditors over another, and is in violation of the letter and spirit of the statute.

Creditor's Bill.—Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed December 2, 1895.

SWIFT, CAMPBELL, JONES & MARTIN, attorneys for appellant.

WILLITS, CASE & ODELL, attorneys for appellee, contended that the transaction whereby appellant acquired the assets was a fraud upon appellee.

At common law the employment of a deed of voluntary assignment to compel creditors to release their claims was fraudulent. Hyslop v. Clark, 14 Johns. 458; Grover v. Wakeman, 11 Wend. 187; Armstrong v. Byrne, 1 Edw. Ch. 79; Haydock v. Coope, 53 N. Y. 68; Howell v. Edgar, 3 Scam. 417; Ramsdell v. Sigerson, 2 Gil. 78; Conkling v. Carson, 11 Ill. 508; Townsend v. Coxe, 151 Ill. 62; Young v. Clapp, 147 Ill. 176.

Any resort to the voluntary assignment act for the purpose of coercing creditors into the acceptance of a percentage of their claims in full satisfaction, and any exhaustion of the assets to procure the consent of a majority of the creditors to a discontinuance, are fraudulent as against non-assenting creditors. Howe v. Warren, 154 Ill. 227; Terhune v. Kean, 155 Ill. 506; Walker v. Q. W. Loverin Co., 37 Chic. Legal News, 318.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

On July 25, 1889, the Q. W. Loverin Company, a corporation, made a general assignment to one John Roper, for the benefit of its creditors. The assignee continued to carry on the business formerly conducted by the assignor until October 10, 1889. On the last mentioned date, the County Court of Cook County, where the assignment proceedings were pending, entered an order, discontinuing the assignment proceedings, and ordering the assignee "to turn over to such person or persons as the said Q. W. Loverin Company may direct, all the assets" remaining in his hands after the payment of his fees, expenses, etc.

It was recited in said order that the said Q. W. Loverin Company, together with ninety-four per cent in number and ninety-two per cent in amount of its creditors, had assented in writing that all the said assignment proceedings might be discontinued.

In pursuance of such order, the said assignee, on said October 10, 1889, reconveyed unto the Q. W. Loverin Com-

pany all the undisposed-of assets remaining in his hands, and simultaneously with such reconveyance and under a previously arranged plan, the said Q. W. Loverin Company conveyed all of said assets by a bill of sale to William T. Van Arsdale, who executed a declaration of trust that he held the same for the benefit of the appellant, the American Exchange National Bank, and subject to its direction.

Some time prior to the order discontinuing the assignment proceedings, Mr. Edgar B. Tolman, who was acting as the attorney of the said Q. W. Loverin Company, made an arrangement with the appellant bank, through its president, under which, if Tolman should produce to the appellant an agreement by a majority of the creditors of the Loverin Company, in number and amount, to accept an agreed percentage for their claims and consent to the discontinuance of the assignment proceedings, it, the appellant, would advance the funds needed to pay for said claims. Under that arrangement Tolman bought and took assignments to himself of a large majority, both in number and amount, of the claims existing against the Loverin company, and the appellant advanced the money to pay therefor. A part of the arrangement between Tolman and appellant was that an order discontinuing the assignment proceedings should follow upon the purchase of said claims, and that the entire assets of the Loverin company then in the hands of the assignee should be turned over to the appellant, or some one it might designate, and belong to it.

No provision was made for any creditor except such as should accept the offered percentage, and there was no arrangement as to the number of claims that should be bought, except that a majority in number and amount should be secured, in order to enable the order of discontinuance to be obtained, and the vesting in the appellants of all the assets held by the assignee, secured.

The appellant itself was also a creditor of the Loverin company to the amount of $10,500, on an indebtedness created before the assignment, and that claim was also assigned by the appellant to Tolman. The advances to Tolman by appellant for buying the other creditors' claims amounted to

about $17,800, and the claim so bought by Tolman, together with its own, were assigned by him to the appellant.

With the appellant thus the owner of the purchased claims and the possessor of all the assets, the business of the Loverin company was continued and carried on by the appellant, through its agent, Van Arsdale, the appellant making further advances for that purpose, until February 25, 1890. By that time the appellant had realized enough out of the assets and business to repay its original claim of $10,500, together with its advances and expenses in full, with interest.

Appellant did not obtain, nor claim any right to have any more for the claims purchased with the money furnished Tolman, than what it actually advanced, with interest.

Being thus repaid in full, the appellant on that day directed Van Arsdale to convey and assign to one Janes all the assets of the business that remained, except the book accounts, and it was done by written assignment or bill of sale of that date.

The consideration of that assignment was expressed as one dollar, and the agreement of Janes to pay all the outstanding indebtedness created by Van Arsdale in connection with the business, and " other good and valuable considerations," and it was recited in the bill of sale that the book accounts were thereby, at the request of Janes, assigned to one John Brown.

The appellant received nothing for the sale to Janes and Brown, or either of them.

So far as we are able to ascertain, the real consideration of the sale to Janes, so far, at least, as either the appellant or Van Arsdale are concerned, was the assumption by Janes of $5,795.11, outstanding indebtedness incurred by Van Arsdale, and the payment of between $200 and $300 by Janes, under the direction of Van Arsdale, to different persons for merchandise.

It is not altogether clear out of what arrangements or negotiations the purchase by Janes arose.

Mr. Dewey, the president of the appellant bank, testified

that the only purpose he had in doing what was done, was to obtain satisfaction of the appellant's claims, and that with that done, he was willing, although no agreement, either express or implied, existed to that effect, to convey the assets to anybody. He further testified that the only conversation he ever had with any one on the subject of what should be done with the surplus assets that might remain after the appellant's claims were satisfied, was with Mr. Edgar B. Tolman, who, as already stated, was the attorney of the Loverin company; that on the day that Van Arsdale made the bill of sale to Janes, or the day before, he sent for Tolman to come to the bank; that Tolman came, and he, Dewey, then said to him, "that the bank's claims were fully satisfied, and with Van Arsdale protected against any possible claim that might arise, we were willing to convey the assets—I do not remember whether I said to him or to anybody connected with the Q. W. Loverin Company—but I did say we would convey on Van Arsdale being properly protected."

During another period of his examination, Mr. Dewey testified :

"I would say that the conveyance by Van Arsdale to Mr. Janes and Mr. Brown was made by the direction of some one connected with the Q. W. Loverin Company either as an officer of the company, or Mr. Tolman, the attorney, but it would be impossible for me to state definitely who gave that direction."

It appears that Janes was the brother of him who was vice-president of the Q. W. Loverin Company, and that Brown was the father-in-law of Q. W. Loverin, and a creditor of the Loverin company at the time of its assignment, to the amount of about $4,500, and that he was one of the creditors who, with others, accepted forty per cent of their claims in cash out of the money advanced by appellant, and consented to the order of discontinuance, and that the book accounts assigned to him without consideration had a face value of between $6,000 and $7,000, and actually realized more than the amount of appellee's judgment. The appel-

lee was a creditor of the Q. W. Loverin Company at the time the latter made its general assignment, and afterward recovered a judgment against it for $1,674.82, upon which an execution was duly issued and returned unsatisfied. He is one of the creditors who did not assign their claims to Tolman, nor consent to the discontinuance of the assignment proceedings, and has never received anything out of said estate. He filed this creditor's bill upon his said judgment in June, 1890.

The bill attacks the acts of the appellant in the matter, and charges it with having become liable by reason thereof to pay the said judgment to appellee, and the decree gave the relief asked.

The legal effect of this transaction, although it took a somewhat different form, was exactly like that attempted and exposed in the case of Howe v. Warren, reported in 154 Ill. 227, and was fraudulent in law against the appellee.

There was, under the facts of this case, except in matter of form, no more of a reinvesting of the assignor with the assigned assets than was done with the assets of the assignor in that case. In form there was an improvement in the methods employed, but the substance was as absent.

It would be mere supererogation for us to elaborate the reasons for this conclusion where there is such easy reference to what the Supreme Court said in that case. The principles there enunciated are precisely in point.

We have no hesitation in saying that the Superior Court entered the correct decree, and it will therefore be affirmed.

MR. JUSTICE WATERMAN.

I am unable to see how appellee is entitled to more than the amount which he would have realized had the assignment proceedings been carried on, the assets disposed of, estate administered, and proceeds distributed by the assignee in the ordinary course.

The rule laid down in Chicago Building Society v. Cowell, 65 Ill. 453–461, seems applicable.