DAVID KELLEY

v.

ALEX. B. LEITH et al.

*Opinion filed October 24, 1898—Rehearing denied December 9, 1898.*

1. VOLUNTARY ASSIGNMENTS—*what not fraud in procuring discontinuance.* Offering all creditors whose claims were not disputed, including some who had not presented theirs for allowance, the full amount of the claims if they would sign a petition for a discontinuance of the assignment proceedings, in order that the assets might be turned back to the assignors to enable them to continue business, is not a fraud upon the rights of those whose claims are contested. (*Howe* v. *Warren*, 154 Ill. 227, *Terhune* v. *Kean*, 155 id. 506, and *American Exchange Bank* v. *Walker*, 164 id. 135, distinguished.)

2. SAME—*when giving chattel mortgage to secure loan to pay claims is not fraud.* Giving a chattel mortgage to secure a loan to pay in full the undisputed claims of all creditors who had petitioned for a discontinuance of the assignment proceedings, in order that the assignor might continue business, is not a fraud upon the rights of creditors whose claims are in dispute, where the unencumbered assets are ample to satisfy any judgments rendered in their favor.

*Kelley* v. *Leith*, 70 Ill. App. 35, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

On July 25, 1896, appellees herein, Alex. B. Leith, Benjamin Hampton and Arthur J. Adams, constituting a copartnership under the name and style of Fulton Machine Works, made their deed of assignment, under the statute, to George T. Robie, for the benefit of creditors. The assignee qualified and took possession, and proceeded under the statute for the distribution of the estate until the 28th of November, 1896, when, upon petition of the insolvents and a majority of creditors who had filed claims against such estate, the assignment was discontinued and the property turned over to the original assignors. The inventory of the assignee showed the good assets to be

worth $163,155, consisting of personal property, $124,353, real estate, $20,000, and good accounts, $18,802. The claims filed within the short time allowed by the statute amounted to $54,705.35, among which was a claim by appellant amounting to $6243.32. Shortly before the order of discontinuance was entered by the county court, the attorney for the insolvents addressed a letter to each claimant, enclosing him an assignment of his claim and also a petition requesting the discontinuance, and directing that such assignment and petition for discontinuance should be placed in the hands of F. E. Brown of the First National Bank of Chicago, the letter indicating that each creditor whose claim had been allowed and was not contested should receive a check for one hundred per cent of his claim, such checks to be delivered to Brown, and with the agreement they were not to be presented for payment until the petitions for discontinuance had been presented and the order of discontinuance allowed by the county court. This form of letter was sent by Brown to all creditors whose claims were not in dispute.

An arrangement had been entered into with one Herbst, a banker, by which he was to loan $75,000 to the insolvents, being a sufficient amount to take up all undisputed claims and also to pay the disputed claims, should judgment be rendered against the insolvents upon trial. Herbst, in consideration of this loan or advancement, was to have the active management and control of the insolvents' property for a time, under a salary, and to advance such other moneys as might be needed by them to get themselves in good working condition. Some creditors had not filed claims within the time allowed by the statute, but these, where not otherwise disputed, were to be paid in full by appellees. No arrangement was made with Herbst to advance any money or make the loan or have any connection whatever with the property until the order of discontinuance was entered and the insolvents fully invested with their property by the county court. It was

then the plan of the insolvents to have all their property in the hands of the assignee turned back to them, to be re-invested by them, they to carry on their business in their own names. A majority of the creditors, in number and amount, of appellees, signed the petitions for discontinuance, and such, together with the request of the insolvents, were presented to the county court, whereupon an order of discontinuance was entered and the property taken out of the hands of the assignee and turned over to the assignors. The claim of appellant was a disputed one, and at that time no action had been taken on it. Herbst then took the chattel mortgage for $75,000, and all claims not disputed were fully paid. Appellees were re-invested with the possession, control and title of their property, and resumed business.

Appellant insists the consent of a majority, in number and amount, of creditors who petitioned to discontinue was obtained by fraud, inasmuch as they were offered to be paid one hundred cents on the dollar of their claim at the time of delivery of the assignment thereof, together with their petitions for discontinuance.

Objection was made by appellant to the entry of the order of discontinuance by the county court and the restoration of the assigned property to the insolvents, and such objections were by the county court overruled. Upon appeal to the Appellate Court for the First District the order of the county court was affirmed, and from that judgment this appeal is prosecuted to this court.

DEFREES, BRACE & RITTER, for appellant.

F. M. COX, (E. M. ASHCRAFT, of counsel,) for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The only question presented for the determination of this court is, whether or not it was error for the Appellate Court to affirm an order of the county court of Cook

county granting a discontinuance of the assignment for the benefit of the creditors and directing the property to be turned over to the assignors.

Section 15 of "An act in relation to assignments for the benefit of creditors," provides as follows: "All proceedings under the act of which this section is amendatory may be discontinued upon the assent in writing of such debtor and a majority of his creditors, in number and amount, and in such case all parties shall be remitted to the same rights and duties existing at the date of the assignment, except so far as such estate shall have already been administered and disposed of; and the court shall have power to make all needful orders to carry the foregoing provision into effect." (Hurd's Stat. 1889, p. 162.)

That a majority, in number and amount, of the creditors of appellees, together with the insolvent debtors, petitioned the county court for an order discontinuing the services of the assignee and ordering the property to be re-invested in the debtors is not controverted. In the absence of fraud connected with the procurement of the assent of a majority, in number and amount, of creditors petitioning for such discontinuance the above statute fully authorizes a county court to discontinue such assignment proceedings, upon compliance with its provisions. It is contended in this case, however, that the signatures of the creditors who petitioned for the discontinuance were procured by fraud. The only fraud insisted on is, that appellees, through their attorney, proposed to all such creditors to pay them one hundred cents on the dollar of their respective claims, conditioned, however, they should sign a petition asking the discontinuance of the assignment proceedings. Such proposition, in the form of a letter, was addressed to and apparently accepted by every creditor who had filed his claim before the assignee and which claim was not disputed or con-

tested. In addition to this, such proposition was apparently made to a number of such creditors who had not complied with the statute in filing their claims within three months with the assignee. The claim of appellant was disputed by appellees, and therefore had not been allowed by the court. Such a condition of affairs certainly does not show fraud, either apparent or constructive. It presents an entirely different question from other cases passed upon by this court, where the property in the hands of the assignee was proposed to be sold, conveyed and turned over to some person other than the debtor, and where it was proposed to pay to creditors only a small per cent of the amount of their claims. In this case the original debtors, by an order of discontinuance entered by the county court of Cook county, were re-invested with the title and possession of all of their property as fully and to the same extent as before the assignment. Appellant, under the order of the court, was then in a position to establish his claim at law, if one existed, and to proceed against the property of the debtors as fully and to the same extent as though an assignment had not been made or an order of discontinuance entered.

It is insisted by appellant, however, that simultaneously with or immediately after the order of discontinuance a chattel mortgage for $75,000 was placed upon the property of appellees. An examination of this record, however, discloses this could not be to the prejudice of the appellant. The total amount of property inventoried by the assignee, after deducting doubtful and worthless accounts, was $163,155. The indebtedness and lien created by the chattel mortgage were only sufficient to pay the just claims presented and allowed against the debtors, and enough, also, to pay the claim of the appellant, should he succeed in procuring a judgment. Such acts on the part of appellees and their attorney in nowise

constituted a fraud, but were apparently only consummated in an honest desire and purpose to pay their debts in full and protect their creditors.

Appellant insists on a reversal of the judgment of the Appellate Court in this cause on the authority of *Howe* v. *Warren,* 154 Ill. 227, *Terhune* v. *Kean,* 155 id. 506, and *American Exchange Bank* v. *Walker,* 164 id. 135. None of these cases will bear the construction placed upon them by appellant, nor is anything said in either of the above cases in conflict with our views held and expressed in this case. The case of *Howe* v. *Warren* was a bill in chancery filed by the creditors after an order of discontinuance of assignment proceedings, setting forth fraud upon a part of the debtors, the assignee and a third person, whereby the county court was procured to enter an order of discontinuance, turning over the property of the debtor to a third person, whereby creditors only realized about thirty-five per cent of their claims, and which order of discontinuance was said to have been procured without the knowledge or consent of the complainant, and by fraud practiced upon those creditors who petitioned for the discontinuance. In that case, instead of the property of the debtor being turned over to the debtor himself, thus leaving it subject to be resorted to by creditors who had not received payment of their claims, the effect of the order of discontinuance was to deprive such creditors, by fraud, of any future remedy.

The case of *Terhune* v. *Kean, supra,* involved, in most respects, the same question presented in *Howe* v. *Warren, supra.* Some of the same parties, the same assigned estate and the same transaction were questioned. It involved the right of the county court, under an order of discontinuance, to order the property of the debtor turned over to a third party, whereby it was no longer subject to the claims of a creditor against an original debtor, and in that case we said (p. 509): "We held in the *Howe case,* that upon a discontinuance of an assignment proceeding under

section 15, added by amendment to the act concerning voluntary assignments, the assigned estate, or so much of it as remained unadministered, should revert to the assignor and still remain liable for the payment of his debts, just as it was at the date of the assignment; that upon the discontinuance the unadministered assets must be treated as though no assignment had been made, each creditor standing upon the same footing, of right, to proceed against it as it existed when the assignment was executed. The language of the statute, 'and in such case all parties shall be remitted to the same rights and duties existing at the date of the assignment, except so far as such estate shall have already been administered and disposed of,' admits of no other construction, as is shown by the opinion filed in that case."

In both the *Howe* and *Terhune cases, supra,* it was not the intention to pay the creditors in full. On the contrary, it is apparent, from a reading of the opinions in those cases, it was intended to prefer some creditors to others. The funds of the estate were used to effect such settlement. This was a fraud upon the rights of other creditors who received no payments. In each of those cases, also, the property was not returned to the assignee, leaving it subject to his debts, but was turned over to a third person.

In the case of *American Exchange Bank* v. *Walker, supra,* the bank was the creditor for about $10,500, and agreed with the president of the insolvent concern, after ascertaining the value of the assets, to pay forty cents on the dollar on all the other claims, whereby, as the bank computed, it would receive its indebtedness in full. This proposition was made to creditors and by them accepted, apparently without knowledge of the fact that the bank, as one creditor, was securing payment of its claim in full. The county court, upon proper showing, entered an order of discontinuance, directing the assignee to turn over the assets to such person or persons as the debtor might

direct. The bank controlled the direction as to whom the assets should be paid, and also held such assets for its own benefit. The result of this was the payment in full of one creditor to the detriment of others, and the disposition of all the assets of the insolvent debtor in such a manner as to preclude creditors from any further remedy. That case has not the features presented by this record. In this case appellant had no judgment, and if the property had remained in the hands of the assignee, appellant would have been compelled to have shared *pro rata* with all other creditors having legal claims. The situation, after the order of discontinuance by the county court, was, that all such claims were fully paid, and instead thereof a chattel mortgage was placed upon the property. It still remained subject to the same equities, rights and remedies of appellant, and in the control, ownership and possession of appellees.

In the absence of any fraud, therefore, and there having been a compliance with the terms of the statute above mentioned, it was proper for the county court to enter an order of discontinuance, and the judgment of the Appellate Court affirming the order of the county court of Cook county is affirmed.                    *Judgment affirmed.*