## Union Trust Company v. Henry M. Hosick.

1. DEBTOR AND CREDITOR—*Latitude Allowed When Creditors of an Insolvent Undertake in Good Faith to Administer His Estate.*—Where it appears that an honest effort is made by creditors to administer the estate of an insolvent debtor themselves, with greater latitude than is permitted by law to an assignee, it should not be the policy of the courts to discountenance such an endeavor, unless some rule of law has been violated.

Creditor's Bill.—Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1899.  Reversed in part and affirmed in part.  Opinion filed May 15, 1900.

**Statement of Facts.**—This was a creditor's bill filed by appellant to subject certain assets in the hands of certain of the appellees to the payment of a judgment recovered by the appellant against the appellee, Hosick. The judgment was recovered December 9, 1896, for $5,564.61 and costs, and the bill was filed April 1, 1897, after the return of an execution no part satisfied. The judgment seems to have been recovered against Hosick as guarantor of one or more promissory notes made by the Chicago and Western Soap Works and held by appellant. Said Soap Works (a corporation in which Hosick was interested) seems to have made an assignment for the benefit of its creditors, and subsequently thereto, and on August 15, 1896, Hosick made an assignment in the County Court for the benefit of his creditors. At the time of making his assignment Hosick's assets figured up about $430,000, and his direct liabilities amounted to about $170,000, in addition to about $120,000, as guarantor or indorser for others.

Hosick's assignee qualified as such and took possession of all his property and apparently proceeded regularly to discharge his duties, and on October 12, 1896, had a balance of $5,012.91 of cash left on hand after making collections of $12,015.73 and disbursements of $7,002.82.

On that day, October 12, 1896, Hosick filed his petition in the County Court for a discontinuance of his insolvency proceedings and for a turning over to him of the assets then in the hands of his assignee, and at the same time a petition by a majority in number and amount of his creditors was filed, representing that they believed it to be for the best interests of the estate and the creditors that the insolvency proceedings should be discontinued.

Thereupon an order of the County Court was entered on the same day, in pursuance of the prayer of the petition, as the statutes authorize the court to do in such cases. (Sec. 15, Ch. 10b, R. S., entitled Assignments for Benefit of Creditors.) Appellant, as one of Hosick's creditors, had previously filed his claim against the estate, but did not join in the request for a discontinuance of the proceedings.

The principal asset of the estate consisted in real property, the personal property which was turned back to Hosick being of the value of about $25,000.

The bill attacked the proceedings in taking the assignment out of the County Court as being fraudulent and void, and called for an answer under oath by all the defendants (appellees), and by an amendment filed subsequent to the answer particularly assailed a certain agreement which was disclosed by the answer, under which the discontinuance of the proceedings in the County Court was effected.

That agreement seems to have been contemplated by some of the creditors soon after Hosick made his assignment, for it bears date September 1, 1896, although we do not observe when it was fully signed. It appears, however, to have been signed by all of Hosick's creditors, except appellant, before the application was made to the County Court for a discontinuance of the insolvency proceedings, and the sworn answer sets forth that it was entered into in the belief that if an extension of time were granted to Hosick and the estate taken out of the County Court and managed, as contemplated by it, the result would be of great benefit to all the creditors, and leave a balance for Hosick.

The agreement was in writing and specified Hosick as party of the first part, and as parties of the second part "the creditors of said H. M. Hosick, who are parties hereto." It was signed by all of Hosick's creditors except the appellant.

In substance, the agreement recited that it was for the interest of all concerned to take the estate of Hosick out of the hands of the assignee in the County Court and place the same with certain trustees, to be selected by the creditors for management, and to accomplish this end it was agreed that Hosick should at once take such steps as might be necessary to secure discontinuance of the voluntary assignment proceedings and have himself reinvested with the title of the property, and as soon as such proceedings had been discontinued he should thereupon assign and convey all of the property to five trustees in trust; that two

of the trustees should be Hosick and Hubbard, his then
assignee, and the other three should be selected by a major-
ity of the creditors. No debts should be incurred by the
trustees without the written consent of a majority of them,
and the compensation of Hosick and Hubbard while acting
as trustees should not exceed $2,000 per annum; that a
majority of the trustees should have entire control of the
business and assets and determine how the business should
be conducted and the assets disposed of, and a majority were
authorized to execute any and all deeds of conveyance and
were authorized to sell, in their discretion, all or any portion
of the assets and take such action as in their judgment
should be for the best interests of all; that the capital used
in the running of the business should not exceed $25,000,
and that to constitute such capital the trustees might use
the proceeds of the present assets or might borrow money
to make up such capital, and might use the proceeds in the
conduct of the business as in their judgment was most expe-
dient; that the business to be carried on should be confined
to hides, tallow, grease, pelts and furs (previously carried
on by Hosick), but that other goods might be taken on
commission; that the trustees should only hold their offices
during the pleasure of a majority in amount of the credi-
tors; that the business should be conducted by the trustees
for two years and they should take all necessary action to
protect the trust property against liens or advances, where
it was held as collateral, or against claims of any kind; that
all creditors who should become parties to the agreement
should extend the time for the payment of their indebted-
ness for a term not exceeding two years; that the trustees
should execute and deliver to all persons who were parties
to the agreement, to whom Hosick was liable, notes bear-
ing a uniform date, maturing four months from September
1, 1896, and bearing interest at the rate of six per cent per
annum, and for the indebtedness remaining unpaid at the
maturity period of said notes, should issue new notes of like
tenor, all of said notes to be in terms subject to this agree-
ment; that the extension provided for should not impair the

liability of Hosick on paper made, indorsed or guaranteed by him, or the right of the creditors of any corporation whose paper he had indorsed to prove up their claims against his estate, then being administered in the County Court, and their right to receive dividends on such claims *pro rata* with others; that if all the liabilities of Hosick were paid at the end of said extension period, then the assets remaining in the hands of the trustees should be reconveyed to Hosick or his legal representatives, and if all of his liabilities were not paid at the end of said extension periods, the assets then remaining in the hands of the trustees should be disposed of as a majority in amount of the creditors of said Hosick might determine; that if the trustees borrowed any money for the purpose of carrying on said business, the notes given therefor should be a first lien upon all the assets in the hands of the trustees, but that the trustees in case of sale should have the power to release such assets from such lien.

Said agreement provided with respect to the paper of the Chicago & Western Soap Works Co., indorsed and guaranteed by Hosick, that the trustees should give the holders of such paper notes executed by them of the same character as before provided, and that such parties might hold the paper uncanceled of the Chicago & Western Soap Works Co. as collateral to the trustees' notes; that all persons holding commercial paper indorsed by Hosick, and all his other creditors, should be parties to the agreement, and stated that a complete list of his liabilities of all kinds was submitted for inspection.

The agreement further provided that it should be signed by at least ninety per cent in amount of the holders of direct liabilities and seventy per cent of the holders of indirect liabilities of said Hosick before it should be binding upon any creditor; and that when the required percentage of creditors should have signed it, the advisory committee should determine whether all should be required to sign it before it became operative.

It was in pursuance of such agreement that the insolv-

cncy proceedings were discontinued and the property turned over to Hosick. He thereupon, on the same day, conveyed all the property to the trustees by appropriate instruments. They took possession and conducted the business for a time, and paid one dividend of six per cent to all creditors except appellant. It seems to be agreed that appellant was requested to join the other creditors in signing the agreement, but refused to do so.

On account of dividends received by appellant from the estate of the Soap Works, appellant's judgment was reduced at the date of the decree, to $4,112.18.

The decree found, *inter alia,* that as to the complainant said agreement, so far as the same authorized the trustees to conduct the business for a period of two years, was fraudulent in law as against the complainant, but that said agreement was not fraudulent as a matter of fact, but was made in the utmost good faith and was for the best interests of all parties concerned therein; that the business was conducted until the first day of May, 1898, when the same was wholly closed and all the personal property held by said trustees finally disposed of and reduced to cash; that in the conduct of said business there was a loss of $7,000 from the value of said personal property, as inventoried by the said trustees; that a dividend of six per cent has been paid to all of the creditors with the exception of the complainant; that no portion of the real estate has as yet been sold, but is still held by them in trust for the creditors; that complainant acquired no lien entitling it to the full payment of its judgment against the property and estate of the said Hosick, and is not entitled to payment in full of its said claim, but only *pro rata* with the other creditors, except as to said loss of $7,000. And the ordering part of the decree is as follows:

"It is therefore ordered, adjudged and decreed by the court that the defendants, as trustees aforesaid, shall, upon demand, pay unto the complainant a dividend of six per cent upon the indebtedness due to it, in the same manner and in like proportion as that paid to all other creditors of Henry M. Hosick; and that the said defendants, as trustees

aforesaid, shall in the future pay unto the complainant the same dividend to which the complainant would have been entitled had the complainant signed and become a party to the trust agreement entered into between said Hosick and his creditors, under the date of September 1, 1896."

Phelps & Cleland, attorneys for appellant.

The interposition of obstacles in the way of a creditor, with fraudulent intent to hinder and delay, is a violation of the statute without regard to the duration of the hindrance or delay. A debtor who attempts to postpone the time of payment endeavors to deprive creditors of a valuable right, and a positive intent to defraud exists where inducement to a conveyance is to hinder or delay. Bump on Fraudulent Conveyances, 3d Ed. 20.

The legal effect of a written instrument is a question of law, and the intent of the parties in making it may be gathered from its face, and where the natural and inevitable consequences of its provisions is to delay or hinder, it is void as a conclusion of law and the court is bound to so find it. Bigelow v. Stringer, 40 Mo. 195; Goodrich v. Downe, 6 Hill, 438; Gardner et al. v. Com. Nat. Bank, 95 Ill. 298.

There is no difference between fraud in fact and fraud in law where the direct and inevitable consequence of an act is to delay or hinder creditors. The presumption at once conclusively arises that such illegal object furnished one of the motives for doing it, and it is upon this ground held fraudulent. The result is the same when the illegal design is established as a question of fact. When there appears among the inducements an intention to violate any duties owing by a debtor to his creditor, the transfer is tainted and will be set aside. Bump on Fraudulent Conveyances, p. 24; Gere v. Murray, 6 Minn. 305.

H. H. C. Miller and W. S. Oppenheim, attorneys for appellees.

A debtor has the right to prefer his creditors. Union National Bank v. State National Bank, 168 Ill. 256; Morriss v. Blackman, 179 Ill. 103.

Where an agreement is fraudulent in law, but not in fact, assignee has a lien upon the property assigned to the full extent of his indebtedness. Phelps v. Curtis, 80 Ill. 109; Libstein v. Lehn, 120 Ill. 549.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The finding in the decree that the agreement, and the conveyance to trustees in pursuance of it were made in good faith, is abundantly supported by the evidence— indeed there is no evidence to the contrary. There was no attempt on the part of Hosick or any of his creditors to exclude appellant from any benefit of the arrangement. On the contrary, the agreement contemplated the uniting of the appellant and every other creditor in the plan, and appellant being invited to join the others was the only one to decline. That it had the right to decline can not be questioned, and it should not be made to suffer because it did so. But on the other hand, it should not be profited by declining, unless the doing of what was done was a fraud upon its rights as a matter of law—there being no fraud in fact.

There is no pretense that the assignment of Hosick in the County Court was not valid and regular in all respects. But it is contended that the plan disclosed by the agreement to withdraw his property from the control of the court and place it back in Hosick's hands, and then for him to convey it to the trustees, in some manner worked a legal fraud upon appellant. The court found in its decree that the arrangement was for the best interests of all parties concerned, which includes appellant, and appellant made no showing under which the court could have found differently.

It might seem, at first thought, that the running of the business at a loss of $7,000 from the inventoried value of the assets, suggests a conclusion to the contrary, but that loss may well have been more apparent than real.

The substantial inquiry after all, with regard to that matter, is what, if anything, was the real loss to the creditors? Courts need not remain in ignorance of what every-

body else knows with reference to the unavoidable losses and expenses that occur in the disposition of insolvent estates through the instrumentalities of assignees in the handling of the assets intrusted to them.

And where it appears that an honest effort is made by creditors to administer the estate themselves, with greater business latitude than can be permitted to court assignees, it should not be the policy of the courts to discountenance such an endeavor, unless in the doing of it some rule of law is violated.

Much stress is placed by appellant upon the cases of Howe v. Warren, 154 Ill. 245, Terhune v. Kean, 155 Ill. 506, and American Exchange Bank v. Walker, 164 Ill. 135, as condemning the course here pursued, but we do not so understand those decisions.

Without pausing to enter upon a special review of what was there decided, it is enough to say that they included elements entirely lacking in this transaction. Here was an open purpose and an honest intention on the part of everybody to manage the estate without preference to any, and to pay the creditors in full—features not existing in either of the cited cases. For an analysis of the decisions in those cases, see Kelley v. Leith, 176 Ill. 311. The arrangement contemplating the return to the debtor of anything that might be left after paying all creditors in full, was no more than would have resulted if the case had remained in the County Court and the creditors had been fully paid through that method of administration.

The contention that the agreement contemplated the benefit of only such creditors as should sign the paper, is not sound. That is not the correct construction of the agreement, and is not the construction the Circuit Court has put upon it. Appellant is as much entitled to its share of the estate as if it had signed; that is not what disturbs the appellant, for it wants to be paid in full whether the other creditors are so treated or not.

The real effect of the transaction is that of a conveyance for the equal benefit of all creditors of the grantor, with

preferences to none, made at a time when (the property having been turned back to its owner) the grantor had full power to dispose of it in that manner.

That it was prearranged does not destroy its validity, and especially so when the previous arrangement contemplated and expressly embraced the equality of all creditors, and no element of unfairness entered into it.

The trust so created is doubtless subject to equitable control and enforcement upon the application of any creditor showing equitable grounds for interference by a court of equity in furtherance of the spirit and purpose of the trust, but it is not open to destruction at the instance of one of its beneficiaries for his sole advantage.

We see no ground upon which to base that part of the decree requiring the trustees to respond to the appellant for all or any part of the $7,000 found to have been lost by them in the management of the trust.

The trust entitled the appellant to share *pro rata* with all other creditors in its benefits, and it seems to be contrary to all principle to charge the burdens of the trust upon some and not upon all the beneficiaries, where there has been no fraud or misconduct, and only an honest effort to administer the trust in accordance with its terms. It does not seem to be consistent to hold that the trust is for the benefit of all equally, and at the same time declare that its burdens shall be borne equally. The learned chancellor seems to have considered that the power given to the trustees to conduct the business for two years, constituted a fraud in law as against appellant, and to have therefore relieved appellant of any part of the $7,000 that was apparently lost in the conduct of the business, but we think the court erred in that conclusion. If the trust is devoid of the elements of fraud, as we think it is, either in fact or constructively, that part of the decree relating to the exemption of appellant from any part of the $7,000 loss is erroneous, and the cross-error relating to that matter should be sustained. In all other respects the decree appears to place the appellant on complete equality with all other creditors, and is right.

The decree needs to be corrected with respect to requiring the trustees to respond to the appellant for any part of the $7,000, and it will therefore be reversed in so far as it does so, and the cause remanded, with directions to the Circuit Court to amend the decree accordingly. In all other respects the decree is affirmed.

Reversed in part and affirmed in part.